LABORDE, Judge.
The plaintiff, Eli Hollier, brought this worker’s compensation suit seeking benefits for total and permanent disability as well as statutory penalties and attorney’s fees. The defendants are his former employer, American Building Systems, Inc., and its insurer, Louisiana Employers Safety Association. The trial court found that the plaintiff is unable to engage in gainful employment without suffering substantial pain; therefore, plaintiff is entitled to worker’s compensation benefits and medical expenses for total and permanent disability. The plaintiff’s demands for penalties and attorney’s fees were denied. The defendants appeal, requesting a reversal of the trial court’s decision and, in the alternative, that the plaintiff be awarded benefits only for partial permanent disability up until the plaintiff’s unrelated heart attack. Finding no trial court error, we affirm.
FACTS
Eli Hollier was employed by American Building Systems, Inc. as a carpenter on March 23, 1983 when he bumped his head on an overhead 2x4 while climbing onto a sawhorse. After striking his head, Hollier fell backwards onto the concrete landing on his buttocks. He suffered no lacerations and was not rendered unconscious as a result of the accident. After gathering himself, the plaintiff continued working through the end of the workday. The next day, Hollier went to his employer’s office to set up an appointment to see a doctor.
The plaintiff first saw Dr. William Bernard, who took some x-rays and gave the plaintiff injections to relieve the neck and shoulder pain. The plaintiff was then referred to Dr. Louis C. Blanda, an Ortho-paedic surgeon, who indicated that the plaintiff related some problems with his neck in 1981, but was treated and released. Plaintiff further admits that “his neck has been hurting intermittently since the first injury, but that he has been putting up with the pain.” The report further states that the pain was markedly aggravated by the March 23, 1983 injury. The report concluded that the plaintiff had a decreased range of motion and a mild degree of spasm present and that neurologically no defects could be detected. Dr. Blanda recommended that the plaintiff wear a collar for about three weeks and be treated with physical therapy and Motrin.
At trial, the medical evidence consisted of the medical reports of Dr. Webre, Dr. Alley, and Dr. Blanda along with the depositions and other medical information of Dr. Thomas Bertuccini and Dr. Norman Anseman. Dr. Bertuccini, a neurological surgeon, testified that he treated and examined the plaintiff from June 16, 1983 until October 2, 1985, a total of fifteen times. Dr. Bertuccini initially saw the plaintiff in the hospital where the plaintiff was undergoing a bilateral occipital nerve block in an attempt to alleviate persistant headache and neck pain complained of by the plaintiff. Dr. Bertuccini consistently concluded throughout his examinations that the plaintiff was suffering from moderate pain in the back portion of his neck on both sides radiating into the occipital region with occassional headaches. In each examination Dr. Bertuccini was unable to find a surgically treatable problem or any neurologic disability. The only objective finding of Dr. Bertuccini was a muscle spasm in the neck found during one of the examinations. On the plaintiff’s last visit, Dr. Bertuccini found the plaintiff to be mentally depressed. Upon further examination, Dr. Bertuccini found tenderness over the occipital nerve implying persistent occipital neuritis. Dr. Bertuccini’s final diagnosis was that the plaintiff was suffering with a chronic pain problem. Dr. Ber-tuccini concluded that the plaintiff’s chronic pain was disabling in that it kept him from going about his normal activities both at work and at home. Dr. Bertuccini was satisfied that the plaintiff’s complaints of pain were sincere.
During the course of his treatment, Dr. Bertuccini referred the plaintiff to Dr. Glen Ally, a clinical psychologist. Dr. Ally examined the plaintiff and concluded that the *703 plaintiff appears to be motivated to return to work. Dr. Ally further concluded that there is no evidence to show conscious malingering and that plaintiff is somewhat impatient with his “lack of progress” and his inability to return to full employment.
Dr. Ally then referred the plaintiff to Dr. Norman Anseman, a physiatrist. Dr. Anseman examined the plaintiff by doing numerous muscle testing to determine any evidence of weakness or localized atrophy. Dr. Anseman testified that there were no objective findings of tightness, spasms, or tenderness in any area of the neck, shoulders, and arms. Dr. Anseman gave the plaintiff a shot to relieve pain complained of in the shoulder blade and an area at the base of the skull. Dr. Anseman put the plaintiff on medicine at bedtime and during the day as needed for tension. The plaintiff was sent to physical therapy, and asked to do ice massages at home, including exercises, posture control of the neck and shoulders and proper sleeping positions. Dr. Anseman continued to administer the plaintiff pain medication at the base of the skull and neck. On his second to last visit, the plaintiff related to Dr. Anseman that he was feeling much better with less pain and less frequent headaches. Dr. Anse-man concluded that the plaintiff could probably go to work by the next visit. Dr. Anseman last saw the plaintiff on June 8, 1984. Plaintiff complained at this time that he was having a lot of pain and had regressed. Everywhere Dr. Anseman touched around the shoulders and neck, the plaintiff exhibited subjective signs of tenderness even though there were no objective findings. Dr. Anseman concluded that the plaintiff had nothing physically wrong with him and that he was exhibiting either a hysterical response or was malingering.
After being examined again by Dr. Ber-tuccini, the plaintiff returned to work for Steven Hebert, Leon Kourey, and Earl Gui-dry. The plaintiff testified that he went to work because he had no money and had to provide for his family. The plaintiff testified that he worked in pain and that additional strenuous activity caused further pain. The plaintiff further indicated that he did not tell his employers that he was working in substantial pain because he had previously been turned down at jobs when he relayed information of a previous injury.
Testimony of a co-worker, Harold Car-mouche, and of the plaintiffs family further supported his testimony that he worked in substantial pain and that work only aggravated his existing injury. Car-mouche testified that the plaintiff complained of headaches and neck pain. Car-mouche further testified that the plaintiff never did look up for too long because of what appeared to Carmouche to be dizzy spells. Besides Carmouche, the plaintiffs wife testified that ever since the March 1983 accident, the plaintiff was very irritable and “would always have pain.” Mrs. Hollier further testified as to their lack of income and the necessity of her husband’s returning to work to support the family after his benefits had been discontinued. Also testifying were the plaintiffs two daughters. Their testimony was consistent with that of the plaintiff and Mrs. Hollier in that the plaintiff was irritable and would complain of pain around the neck and shoulder area with signs of increased pain upon returning from work. On September 5, 1984, the plaintiff filed suit for total permanent disability and in the alternative total temporary disability resulting from the March 23, 1983 work related accident.
The trial court found that the plaintiff had been working in substantial pain since the date of the injury on March 22, 1983. The court concluded that the plaintiff, a 58 year old carpenter with no other training or education, is unable to engage in any gainful employment without suffering substantial pain and was, therefore, entitled to worker’s compensation benefits and medical expenses for total and permanent disability benefits from June 7, 1984, the date his benefits were discontinued. Although not explicitly stated in his reasons for judgment, the trial court considered the plaintiff an odd lot worker entitled to total and permanent disability under LSA-R.S. 23:1221(2). The court further found that because of Dr. Anseman’s opinion, the defendants were not arbitrary and capricious *704 in terminating the plaintiff’s benefits on June 7, 1984. The issue on appeal is whether the trial court was correct in finding that the plaintiff was working in substantial pain and was therefore entitled to total and permanent disability benefits.
The appellant contends that the trial court erred in finding that the plaintiff was totally and permanently disabled when he represented himself as fit and ready to perform his duties. The appellant points to the instances after the March 1983 injury in which the plaintiff worked for three different employers. After a review of the record, we do not find the plaintiffs attempt to go back to work after the March 22, 1983, determinative of the issue of disability. The plaintiff testified that after Dr. Anseman found him fit for work and his disability benefits were cut off, he had no alternative but to go back to work to support his family. The trial court found that the plaintiff worked in substantial pain and was unable to return to his job as a carpenter without experiencing substantial pain. See Whitaker v. Church’s Fried Chicken, Inc., 387 So.2d 1093 (La.1980); Vernon v. Aetna Life and Casualty Insurance Company, 442 So.2d 674 (La.App. 1st Cir.1983).
Defendants further argue that the medical evidence does not support a finding of disability due to working in pain. The defendant asserts that the objective medical evidence and testimony of his co-employees and employers refutes the plaintiffs assertions that he is totally disabled and unable to engage in gainful employment without substantial pain.
Whether or not the plaintiff has met his burden of proof in a disability matter must be determined by examining the totality of the evidence, including both medical and lay evidence. Tantillo v. Liberty Mutual Insurance Company, 315 So.2d 743 (La. 1975).
Pain experienced by a claimant seeking compensation benefits is a question of fact to be resolved by the trier of fact. Newell v. United States Fidelity and Guaranty Company, 368 So.2d 1158 (La. App. 3rd Cir.1979). In the instant case, the trier of fact, the judge, decided that the medical evidence of Dr. Bertuccini and Dr. Ally was dispositive of the issue of pain. The trial judge chose not to rely on the testimony of Dr. Anseman who could not find any objective symptoms of pain. The trial judge further relied on the testimony of the plaintiff, co-worker, and family members of the plaintiff. The trial judge is the one to evaluate the medical testimony as well as the lay testimony in determining the extent of the pain suffered by the claimant. In determining the extent of the pain, the trial judge must evaluate the claimant’s testimony as he is the only one capable of describing his own pain. Kraemer v. Louisiana Power and Light Co., 393 So.2d 346 (La.App. 1st Cir.1980). The trial court found the testimony of the plaintiff and his lay witnesses to be credible in determining the amount of pain suffered by the plaintiff. Chaisson v. Lafourche Parish Council, 449 So.2d 110 (La. App. 1st Cir.1984). It is the function of the trial court to determine the weight to be accorded the lay and medical testimony. The physical inability of a worker’s compensation claimant to return to work due to substantial pain is a question of fact and will not be disturbed unless clearly wrong. Patin v. Continental Casualty Company, 424 So.2d 1161 (La.App. 1st Cir.1982), writ denied, 429 So.2d 145 (La.1983).
Plaintiff’s alleged disability is the inability to work due to substantial pain. The degree of pain is a factual determination which depends to a great extent on the trial judge’s evaluation of plaintiff’s credibility. The trial judge considered the depositions of two physicians as well as medical evidence of four other doctors. The trial judge also considered the testimony of the plaintiff as well as the testimony of six lay witnesses. The trial judge accepted the testimony of the plaintiff, his family, a co-worker, Dr. Bertuccini, and Dr. Ally, thereby rejecting the testimony of Dr. Anseman. While different results may have been reached, considering the record as a whole, we cannot say that the trial judge’s conclusion that the plaintiff was *705 totally and permanently disabled was manifestly erroneous.
For the above and foregoing reasons, we affirm the decision of the trial court. All costs of this appeal are to be paid by the defendants.
AFFIRMED.