562 So.2d 1006 (1990)
Timothy James BROUSSARD, Plaintiff-Appellant,
v.
GREY WOLF DRILLING COMPANY and American Excess Underwriters, Inc., Defendants-Appellees.
No. 89-43.
Court of Appeal of Louisiana, Third Circuit.
May 23, 1990.
*1008 Miller & Miller, Michael B. Miller, Crowley, for plaintiff-appellant.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, John F. Wilkes III, LaFayette, for defendant-appellee.
Before LABORDE, KNOLL and KING, JJ.
KING, Judge.
The main issues presented for review by this appeal are whether the trial court was correct in awarding plaintiff medical benefits resulting from his work-related accident while denying plaintiff's claim for weekly disability benefits, whether the trial court was correct in finding that defendants were not arbitrary and capricious in refusing to pay benefits, and whether the trial court conducted a proper de novo review of the evidence to determine if it supported the findings of fact and recommendations of the Commissioner.
Timothy J. Broussard (hereinafter plaintiff), a welder employed by Grey Wolf Drilling Company, filed a petition for worker's compensation benefits after he was injured in a work-related accident which occurred on October 13, 1984. Named as defendants were his employer, Grey Wolf Drilling Company, and its worker's compensation insurer, American Excess Underwriters, Inc. (hereinafter defendants). Following the accident, defendants paid plaintiff weekly worker's compensation benefits and medical expenses, but terminated weekly benefits on January 8, 1987. Plaintiff filed this suit seeking reinstatement of benefits, payment of medical expenses, penalties and attorney's fees. The case was heard by the Commissioner of the Fifteenth Judicial District Court. In the Commissioner's Findings of Fact and Recommended Disposition, he found that plaintiff did not prove his claim for disability benefits, that plaintiff should be awarded past and future medical and hospital benefits, and that defendants were not arbitrary and capricious in failing to pay these benefits. The Commissioner assessed all costs against defendants. Both plaintiff and defendants filed Motions to Traverse the Commissioner's findings. On July 11, 1988, the trial judge conducted a hearing on the Motions to Traverse. At the close of the hearing, he took the matter under advisement. On July 22, 1988, the trial judge issued written reasons for judgment accepting the findings of fact and recommendations of the Commissioner. The trial court noted, however, that the award for future medical and hospital expenses should be understood to mean that defendants are only responsible for medical expenses incurred as a result of the work-related accident. The trial court assessed court costs equally against both parties. A formal written judgment was signed. From this judgment, both plaintiff and defendants have appealed. We affirm.

FACTS
On October 13, 1984, plaintiff was injured while in the course and scope of his employment. Plaintiff was working as a welder fitting a pipe when he slipped and fell, injuring his back. Following the accident, plaintiff complained of pain in his lower back which radiated down into his legs, and pain in his groin area.
Plaintiff sought treatment from his family physician, Dr. Lawrence Gardiner. Dr. Gardiner examined plaintiff on October 17, 1988, and was of the opinion that plaintiff had sustained a severe contusion and muscle sprain of the back. He referred plaintiff to Dr. Fred Webre, an orthopedic surgeon. Dr. Webre first saw plaintiff on October 24, 1988. Upon performing a physical examination, Dr. Webre found no muscle spasm in plaintiff's back, no neurological impairment, and no problem with plaintiff's sensory perception. Dr. Webre fitted plaintiff with a lumbosacral corset so that plaintiff would get over his "back strain" quicker. Plaintiff returned to Dr. Webre on four more occasions. His follow-up examinations were completely normal. As of November 29, 1984, it was Dr. Webre's opinion that "[t]here was no impairment to function that would prevent him [plaintiff] from doing his regular job."
Plaintiff next went to see Dr. John Cobb, another orthopedic surgeon. Again, plaintiff *1009 related pain in his back and occasional leg pain. Dr. Cobb performed a neurological exam and took x-rays of plaintiff's lower back on January 16, 1985, both of which revealed no abnormal findings. Dr. Cobb sent plaintiff to Lafayette General Hospital for further testing. A myelogram, and a CT scan were performed. Essentially, these tests proved negative, but Dr. Cobb felt they were inconclusive in terms of confirming an injury to a lumbar disc. Dr. Cobb suggested that a discogram be performed. Dr. Cobb subsequently performed a discogram and found no evidence of a disc injury. Dr. Cobb thought that plaintiff's symptoms were possibly related to an inflammatory reaction of the nerves and facet joints and gave plaintiff steroid injections to help relieve his pain. Plaintiff continued to complain despite the fact that Dr. Cobb could find no objective physical reasons to support his complaints. As of June 19, 1985, Dr. Cobb felt that he could do no more for plaintiff from an orthopedic standpoint. Dr. Cobb felt that plaintiff was physically fit to return to work, but because of plaintiff's subjective complaints of pain, would recommend that he start off with light duty work.
Dr. Cobb recommended that plaintiff see Dr. James Domingue, a neurologist. Dr. Domingue reviewed the results of plaintiff's myelogram and CT scan and agreed that the results were normal. Dr. Domingue's neurological exam on June 11, 1985, was also normal. Plaintiff called Dr. Domingue on July 13, 1985, reporting that he had lost complete control of his bowels. Dr. Domingue admitted plaintiff to Lafayette General Hospital on that date for an evaluation. During his hospital stay, plaintiff underwent further testing. Chest x-rays, a CT scan, lumbar and thoracic myelograms, and a bone scan all produced normal findings. The results of plaintiff's GI series revealed inflammation of the duodenum and acute and chronic gastritis. Dr. Domingue opined that the pain medication that plaintiff was taking could have caused plaintiff's duodenum and gastric problems.
Plaintiff was discharged from the hospital on July 17, 1985 with a diagnosis of back pain, gastric ulcer and bulbar duodenitis. Plaintiff returned to Dr. Domingue on August 23, 1985 at which time Dr. Domingue scheduled a test called a median and tibial nerve evoked response. This test was later performed and the results were again normal. Throughout all the tests that were performed on plaintiff, Dr. Domingue did not find any objective signs to support plaintiff's subjective complaints. Dr. Domingue last saw plaintiff on November 21, 1985. On that date, Dr. Cobb's office had called Dr. Domingue concerned that plaintiff had suffered a seizure. Dr. Domingue examined plaintiff and found him mentally normal, alert and oriented. Dr. Domingue noted that he "didn't have any explanation for his [plaintiff's] spells and [he] was concerned that this represented a conversion reaction; that is a psychological disorder." Dr. Domingue intended to hospitalize plaintiff and have him seen by a psychologist, but plaintiff told Dr. Domingue that he had previously been evaluated by Dr. Jimmie Cole, a clinical psychologist.
Dr. Jimmie Cole saw plaintiff on only one occasion, July 30, 1985. Dr. Cole questioned plaintiff to obtain a history concerning his psychological problems, and gave plaintiff the Minnesota Multiphasic Personality Inventory test. The results of this test revealed that plaintiff is predisposed to psycho-physiological reactions and somatic complaints which Dr. Cole explained meant that plaintiff uses physical complaints to avoid dealing with basic psychological problems. The test showed that plaintiff has a marked hypochondrical, hysterical and depressive profile. Dr. Cole stated that plaintiff's problem is probably "a long standing neurotic condition and it's not just related to this immediate problem or this immediate situation ..." However, Dr. Cole was of the opinion that plaintiff's psychological condition was aggravated at the time of his visit due to his accident. Dr. Cole stated that it is "borderline whether or not he [plaintiff] would actually be a malingerer," that is, one who is trying to deceive. Dr. Cole feels he would have to see more of plaintiff to determine if his complaints of pain are real. Dr. Cole's impression of *1010 plaintiff was that he was not totally disabled from a psychological perspective, although he did need some psychological treatment. Dr. Cole expressed the opinion that some light duty work would be good therapy for plaintiff.
At the request of defendants, plaintiff was seen by five different orthopedic surgeons during the course of his injury. Plaintiff was examined by Dr. Michel Heard, Dr. James McDaniel, Dr. Thomas Butaud, Dr. William Meuleman, and Dr. James Butler. We will briefly review these physicians' testimony.
Dr. Heard saw plaintiff on February 5, 1985. His findings were that plaintiff suffered from a soft tissue injury or lumbar strain. Dr. Heard placed plaintiff on no work status but anticipated a full eventual recovery and return to his regular job activities.
On July 29, 1985, Dr. McDaniel performed a physical examination of plaintiff. He found no objective signs of an injury. Dr. McDaniel was of the opinion that, from an orthopedic standpoint, plaintiff exhibited no physical problems that would restrict his activities. Dr. McDaniel felt that plaintiff could return to work with no restriction on the type of work he could perform.
Dr. Butaud's initial impression of plaintiff on September 4, 1985 was that plaintiff had a possible ruptured disc or nerve root impingement. However, after receiving and reviewing plaintiff's prior myelogram and x-rays, Dr. Butaud came to the conclusion that plaintiff did not have a ruptured disc. Dr. Butaud's recommendation was that plaintiff participate in a rehabilitation program and "not have anything done to his back."
Dr. Meuleman examined plaintiff on March 6, 1986. He noted inconsistencies in plaintiff's reaction to his seated sciatic tension test. He reviewed plaintiff's prior tests and agreed that the results were normal. Based on his examination and review of plaintiff's prior tests, Dr. Meuleman did not see any reason why plaintiff could not return to the type of work he was doing before the accident.
Dr. Butler is an orthopedic surgeon in Houston, Texas who saw plaintiff on January 7, 1986. Following his physical examination, Dr. Butler stated that he found no objective signs to support plaintiff's subjective complaints. However, because he believed plaintiff was sincere in his complaints, Dr. Butler initially recommended an exploratory lumbar laminectomy to try to discover the source of plaintiff's pain. However, after Dr. Butler reviewed plaintiff's CT scan, discogram, myelogram and x-rays, he withdrew his recommendation for exploratory surgery. Instead, Dr. Butler suggested that plaintiff undergo an electromyography and an MRI. These tests were then performed and the results were negative. Dr. Butler opined that plaintiff should "get back into the labor force, some way or another." Dr. Butler was unable to find anything wrong with plaintiff's back.
Finally, on November 5, 1987, more than three years after the date of his accident, plaintiff saw Dr. John Jackson, a neurological surgeon of his own choice. Dr. Jackson performed a neurological examination and noted a slightly decreased Achilles reflex which could indicate, according to Dr. Jackson, some nerve root dysfunction. Dr. Jackson thought that plaintiff may have a bulging disc but would recommend more diagnostic tests to confirm his beliefs. Dr. Jackson stated that if plaintiff wants to consider surgery, he should have another MRI performed. From a neurological standpoint, Dr. Jackson found very few signs that would prevent plaintiff from returning to work, however, in view of the pain plaintiff related to Dr. Jackson, he would not advise that plaintiff return to work.
Plaintiff, who testified at the trial, stated that he still has pain in his lower back which sometimes goes down into his legs, and continues to have pain in his groin area. He admits that he feels better since the date of his accident but still has pain when he tries to do certain activities. Plaintiff does not feel that he would be able to return to the type of work he was doing before his accident.
*1011 Plaintiff's live-in girlfriend testified that plaintiff sometimes loses his balance in his legs and she has seen him fall because of this. She also stated that plaintiff has trouble lifting heavy objects.
After carefully considering all of the evidence, the Commissioner found that the evidence was "conflicting and inconclusive as to the nature and cause of the plaintiff's complaints." Consequently, the Commissioner held that plaintiff failed to establish by a preponderance of the evidence that he was disabled. However, because of the numerous doctors' opinions and conflicts therein, the Commissioner found that plaintiff should be awarded past and future medical and hospital benefits. The Commissioner noted in his Findings of Fact and Recommended Disposition that:
"This court is convinced that the plaintiff was sent to too many physicians for the purpose of case preparation and to too few physicians for the purpose of clearly and definitively establishing the plaintiff's condition and, once his condition was established, treating that condition or closing the case."
Finally, the Commissioner found that defendants were not arbitrary and capricious in refusing to pay benefits and refused to assess penalties and attorney's fees against defendants.
The trial court, after conducting a de novo review of the disputed findings and recommendations of the Commissioner, accepted his recommendations, and taxed court costs equally to both parties. Both plaintiff and defendants appeal.

DECISION
Plaintiff contends that the trial court erred in failing to find he was disabled and entitled to weekly disability benefits. The worker has the burden of proving his disability to a legal certainty and by a preponderance of the evidence. Campbell v. Luke Const. Co., 465 So.2d 688 (La.1985); Gibson v. Hayes Oilfield Const. Co., 467 So.2d 1304 (La.App. 3 Cir.1985), writ den., 472 So.2d 918 (La.1985). In every case, the totality of the evidence, medical and lay, must be examined by the court in making its determination of whether to grant a disability award. Crawford v. Al Smith P. & H. Service, Inc., 352 So.2d 669 (La.1977); Gibson, supra.
In this case, the Commissioner and the trial court found that plaintiff failed to meet his burden of proving his disability. After reviewing the totality of the evidence, we cannot say that the trial court was in error in reaching that conclusion. Of all the doctors that examined plaintiff, not one could say with any certainty that something was wrong with plaintiff's back. In fact, six of the doctors recommended that plaintiff return to some type of work.
On appeal, the trial court's factual findings with regard to the issue of disability are entitled to great weight, and will not be disturbed absent clear error. Culp v. Belden Corp., 432 So.2d 847 (La.1983). We find that the trial court was not clearly in error in refusing to award plaintiff weekly disability benefits.
Next, plaintiff contends that the trial court erred in failing to find that defendants were arbitrary and capricious in refusing to pay disability benefits and provide medical treatment to plaintiff.
Since we have held that plaintiff did not prove by a preponderance of the evidence that he was disabled, and therefore not entitled to disability benefits, defendants cannot be arbitrary and capricious in refusing to pay these benefits. Wright v. Insurance Co. of North America, 491 So.2d 161 (La.App. 3 Cir.1986). However, we still must consider whether or not defendants were arbitrary and capricious in failing to provide medical treatment.
La.R.S. 23:1201 and 23:1201.2 subjects an insurer, who fails to pay compensation claims, to payment of penalties and attorney's fees when the failure to pay is arbitrary or capricious. However, Louisiana courts have consistently held that these statutes are penal in nature and, as such, must be strictly construed so that employers are not penalized for taking close factual questions to court for resolution, and for relying on valid defenses. *1012 Fontenot v. Citgo Petroleum Corp., 529 So.2d 69 (La.App. 3 Cir.1988).
The Commissioner found, and the trial court held, that defendants were not arbitrary and capricious in failing to pay these medical expenses. The determination of whether an insurer is arbitrary or capricious depends primarily on the facts known to the employer at the time of its action and is a question of fact not to be disturbed in the absence of manifest error. Marcel v. Craig Guidry Const. Co., 511 So.2d 48 (La.App.3 Cir.1987).
Doug Motty, who was the insurance adjuster for defendants, testified that every medical bill that was received from plaintiff's treating physicians from 1984 until 1986 was paid. The only payment defendants refused to guarantee, as reflected in the record, was the exploratory laminectomy that Dr. Butler recommended. Mr. Motty stated that defendants refused to approve payment for the exploratory surgery recommended by Dr. Butler because initially they wanted another opinion and, furthermore, because Dr. Butler subsequently changed his mind about the surgery.
Considering the varying opinions that defendants were receiving from the doctors, we find they had a legitimate basis for refusing to approve payments for the exploratory surgery. In fact, under these circumstances, we think it would be manifestly unfair to assess penalties and attorney's fees against the defendants. For these reasons, we find that the trial court was not clearly wrong or manifestly erroneous in failing to find defendants arbitrary and capricious for refusing to provide medical treatment.
Finally, plaintiff claims that the trial court erred in failing to make a de novo determination of the Findings of Fact and Recommendations of the Commissioner. Plaintiff contends that the Commissioner's findings and recommendations were incomplete and/or unclear and prohibited the trial court from rendering an opinion based on these incomplete findings.
At the outset, we find no merit in plaintiff's contention that the Commissioner's findings and recommendation were incomplete or unclear. We find, rather, that the Commissioner properly considered all the evidence, testimony, and depositions submitted and clearly addressed each disputed issue with proposed recommendations. We also find no merit in plaintiff's contention that the trial court failed to make a de novo determination of the Commissioner's findings and recommendations.
Following the hearing on the Motions to Traverse the Commissioner's findings, the trial court took the matter under advisement. Eleven days later, the trial court issued its ruling and written reasons therefor. Although, in his written Reasons for Judgment, the trial judge expresses concern over what the proper standard for a de novo review is, he clearly states that La.R.S. 13:716, the applicable statute, "requires a de novo determination of any disputed finding or recommendation." The trial judge further stated that he had "reviewed, de novo, the findings and recommendations of Commissioner Clause ..." We find no evidence in the record to support plaintiff's contention that the trial court did not conduct a de novo review of the evidence in the record and do not find that the language used in the trial court's written opinion meant that the trial court did not conduct an independent de novo review of the evidence in the record.
Defendants, in their appeal, allege that they should not be held responsible for a "blanket" recovery of plaintiff's future medical expenses. In the trial court's written reasons for judgment, the trial judge stated that the "award of future medical and hospital benefits should be understood to mean that the compensation carrier will be required to pay for future medical and hospital claims that have the proper connexity to the work related accident."
An employer is responsible for a worker's medical expenses only if they are occasioned by the work-related injury. Charles v. Aetna Cas. and Sur. Co., 525 So.2d 1272 (La.App. 3 Cir.1988), writ den., 531 So.2d 480 (La.1988). Future medical *1013 expenses are not allowed in worker's compensation cases unless proved at trial. Gibson v. Hayes Oilfield Const. Co., supra.
The trial court did not render judgment against defendants for any specific amount of future medical expenses. The final written judgment states:
"IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of TIMOTHY JAMES BROUSSARD and against GREY WOLF DRILLING CO. and AMERICAN EXCESS UNDERWRITERS, INC., finding that TIMOTHY JAMES BROUSSARD received injuries while in the course and scope of his employment with GREY WOLF DRILLING CO., that TIMOTHY JAMES BROUSSARD is entitled to all medical benefits resulting from the work related accident."
The judgment merely confirms plaintiff's right to assert his claim for any medical benefits arising from or relating to the accident as they might become due. Campbell v. Luke Const. Co., 543 So.2d 1032 (La.App. 3 Cir.1989); Anderson v. Eagle Asbestos Co., 355 So.2d 1082 (La.App. 4 Cir.1978). We find that the language of the judgment sufficiently limits recovery to those future medical expenses incurred as a result of the job-related accident. Defendants' claim that the judgment awards a "blanket" recovery for medical expenses is unfounded.
Defendants also contend that the trial court should not have assessed court costs one-half to each party in this suit. Under La.C.C.P. Art. 1920, "the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable."
In this case, the court denied plaintiff's claim for disability benefits, but awarded plaintiff future medical and hospitalization benefits arising from the job-related injury. Under these circumstances, we find no abuse of discretion in the trial court's judgment assessing one-half of the court costs to each party.
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are taxed one-half to plaintiff-appellant and one-half to defendants-appellees.
AFFIRMED.