569 So.2d 1006 (1990)
Nanette Durand VILLAGOMEZ, Plaintiff-Appellant,
v.
HOWARD TRUCKING COMPANY and National Union Fire Insurance Company, Defendants-Appellees.
No. 89-329.
Court of Appeal of Louisiana, Third Circuit.
October 24, 1990.
*1007 Thomas R. Edwards, Opelousas, for plaintiff-appellant.
Allen & Gooch, James H. Gibson, Lafayette, for defendants-appellees.
Before DOUCET, KNOLL and KING, JJ.
KING, Judge.
The sole issue presented by this appeal is whether the trial court was correct in finding that plaintiff was not either totally and permanently disabled or temporarily totally disabled.
Nanette Durand Villagomez (hereinafter plaintiff) filed a suit for worker's compensation benefits against her employer, Howard Trucking Company, and its worker's compensation insurer, National Union Fire Insurance Company (hereinafter collectively referred to as defendants) as a result of an April 6, 1982 work-related accident. Defendants filed an answer denying that plaintiff was disabled. The matter was tried and taken under advisement. The trial judge subsequently issued written Reasons For Judgment in which he found plaintiff was not entitled to any further worker's compensation benefits after September 21, 1987. A formal written judgment was signed. Plaintiff timely appeals. We affirm.

FACTS
On April 6, 1982, plaintiff was involved in a work-related automobile accident while in the course and scope of her employment. Following the accident, plaintiff received weekly worker's compensation benefits, totaling $34,146.00, and medical expenses, totaling $21,201.00, until defendant terminated these benefits on September 21, 1987.
Plaintiff filed suit on November 8, 1987 for worker's compensation benefits, penalties, and attorney's fees claiming that she was still disabled as a result of her work-related accident. Defendant answered denying that plaintiff was still disabled. A trial on the merits was held on November 30, 1988. Plaintiff testified that since the accident she had experienced pain in her neck, shoulder, and right arm. Plaintiff's husband testified that before the accident plaintiff enjoyed her job as a hot shot driver transporting goods for the oil industry, but that since the accident she could not perform household chores and that their relationship has deteriorated because of her inability to contribute financially and her constant complaints of pain. Susan Pratt, a friend of plaintiff, testified about plaintiff's activities in her daily life both before and after her accident.
*1008 The medical evidence consisted of the depositions of several physicians. Dr. Raeburn C. Llewellyn, a neurosurgeon who treated plaintiff, testified that he first examined plaintiff on November 20, 1984. After obtaining a medical history, which included a history of conservative treatment by two physicians for injuries to her neck and right shoulder blade after the automobile accident, Dr. Llewellyn conducted a physical examination which revealed muscle spasms in the neck area and restricted movement of the neck. He found that plaintiff's reflexes were normal and that her right forearm and right hand had decreased sensation, and her right hand and right wrist had decreased grip strength. Based on these findings and her complaints of pain from the neck into the right shoulder and down into the right arm, Dr. Llewellyn diagnosed her condition as a muscle and ligament strain accompanied by a possible cervical disc injury and began treating her conservatively. Dr. Llewellyn recommended further testing of plaintiff but this was not done until May, 1985.
On May 12, 1985, a cervical discogram ordered by Dr. Llewellyn revealed an eruptible disc tear at the C5-6 level. A CAT scan revealed spinal stenosis (narrowing of the spinal canal) at the C5-6 level. He continued to treat plaintiff conservatively with Darvocet (a pain reliever), Soma Compound (a muscle relaxant) and B-12 intramuscular injections to reduce the swelling of the nerve structures at the C5-6 level.
In August, 1985, plaintiff returned with complaints of more intense back pain, neck pain, headaches and right shoulder blade pain. An examination revealed muscle spasms in the cervical area and decreased sensitivity in the right forearm and decreased grip strength in the right wrist and hand. Dr. Llewellyn felt that plaintiff's disc injury was not healing and was concerned that she may have some associated rheumatoid arthritis problems.
Plaintiff returned to Dr. Llewellyn in February, 1988 with complaints of pain in the neck, right shoulder and right arm, and numbness and weakness of the right arm and hand. Dr. Llewellyn again found muscle spasms in the neck area with restricted movement and mild grip strength loss and positional numbness of both arms and hands.
On cross-examination, Dr. Llewellyn conceded that the task of caring for young children, which includes repetitive lifting and carrying, can prolong the persistence of a cervical disc injury. Plaintiff has two children, ages 4 and 8. In her present condition, he felt that plaintiff was not fully capable of lifting her children or performing household tasks and that she should restrict those activities to a minimum. He also advised plaintiff to limit her driving since that aggravated her condition. He accepted her complaints as genuine and opined that her recovery would probably take approximately two years of ongoing treatment. Dr. Llewellyn felt surgery was not indicated and he did not believe that plaintiff was totally and permanently disabled. He did feel that at the time of his examination plaintiff was disabled from working. Plaintiff had not seen Dr. Llewellyn since February 1, 1988.
Plaintiff was also examined by three other physicians. On November 11, 1986, Dr. Louis Blanda, an orthopaedic surgeon, examined plaintiff and observed decreased range of motion in the neck but no muscle spasm. He also detected a considerable snapping or cracking of her right shoulder blade when moved but x-rays revealed no abnormalities. A MRI and a CT scan of the right scapula and cervical area were normal. He advised plaintiff to avoid activities which produce the shoulder pain and opined that she was capable of returning to work in a light duty capacity with no heavy lifting or overhead work.
Dr. Robert Applebaum, a neurosurgeon, performed a physical examination on plaintiff on August 14, 1987. He found no muscle spasm and a normal range of motion of the neck, but noted that pressure to the cervical spine produced pain. He observed the shoulder problem but found no muscle atrophy. Since plaintiff's reflexes and sensations were normal, Dr. Applebaum opined that she had no impairment *1009 and felt that from a neurological perspective, she was capable of employment.
Dr. J. Monroe LaBorde, an orthopaedic surgeon, examined plaintiff on September 8, 1987. The reflex, sensation and strength tests were all normal and no muscle atrophy was detected in either her arms or legs. Plaintiff had some tenderness in the sacrum area of her back and near the shoulder blade area. Based on these findings, he concluded that plaintiff had no objective physical impairment and opined that she could return to full time employment with minimal pain. Dr. LaBorde did accept plaintiff's complaints of pain as sincere and speculated that the pain might be of psychological origin. Based on this medical evidence and these doctors' reports, defendant terminated plaintiff's worker's compensation benefits on September 21, 1987.
Plaintiff filed suit after the worker's compensation benefits she had been receiving were terminated, and defendant answered denying that plaintiff was still disabled. The matter was tried on November 30, 1988 and judgment was rendered against the plaintiff. The trial court found that plaintiff had not met her burden of proving that she was either totally and permanently disabled or temporarily totally disabled. Thus, the trial judge concluded that plaintiff was not entitled to further compensation benefits. Plaintiff timely appeals contending that the trial court erred in failing to find that she was either totally and permanently disabled or temporarily totally disabled.

LAW
LSA-R.S. 23:1221(1) and (2), as it appeared in 1982 at the time of plaintiff's injury, provided that:[1]
"(1) For injury producing temporary total disability of an employee to engage in any gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds per centum of wages during the period of such disability.
(2) For injury producing permanent total disability of an employee to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds per centum of wages during the period of such disability."
We have stated that "[t]he worker has the burden of proving his disability to legal certainty and by a preponderance of the evidence." Latiolais v. Home Ins. Co., 454 So.2d 902, at page 905 (La.App. 3 Cir.1984), writ den., 460 So.2d 610 (La.1984); Gallien v. Supreme Contractors, Inc., 448 So.2d 871 (La.App. 3 Cir.1984).
Plaintiff claims that because of her 1982 accident, she is still disabled and unable to return to work and should therefore continue to receive worker's compensation benefits.
The trial judge carefully reviewed all of the medical evidence presented by plaintiff and defendant. The trial judge stated in his Reasons For Judgment that:
"The evidence showed that the plaintiff has an extensive history of work experience in the type of employment which would be compatible with the limitations imposed upon her by Dr. Blanda and, probably, even Dr. Llewellyn. Considering all of the lay testimony and the medical evidence, the Court concludes that the plaintiff has failed to prove by clear and convincing evidence that she is totally and permanently disabled. The Court likewise concludes that the plaintiff has failed to prove, by a preponderance *1010 of the evidence, that she is temporarily totally disabled.
In making its findings that the plaintiff is not entitled to workmen's compensation benefits, the Court does not imply that the plaintiff is malingering about her perceptions about her problems. However, the Court simply feels that whatever problems the plaintiff may now be having have not been proven to be work-related and/or sufficiently proven to be disabling from an objective point of view.
Because of its findings on the disability issue, the Court denies plaintiff's claim for penalties and attorney's fees."
The trial judge did state in his written Reasons For Judgment that plaintiff did not prove by "clear and convincing evidence" that she was totally and permanently disabled. This would have been an erroneous burden of proof on plaintiff under the applicable law in effect at the time of the accident, but we find this error harmless. The trial court noted in its written reasons for judgment that "Dr. Llewellyn felt surgery was not indicated and did not feel that the plaintiff was totally and permanently disabled." This finding of fact is supported by the record. All of the doctors who examined plaintiff, including Dr. Llewellyn who examined and treated plaintiff, found that plaintiff was not totally and permanently disabled.
There was a dispute in the medical and lay evidence presented by plaintiff and defendant concerning whether plaintiff was temporarily totally disabled. The trial judge, after weighing all of this evidence, chose to believe the testimony of defendants' doctors over the testimony of plaintiff's doctor, husband, and friend on the issue of temporary total disability. Whether a claimant's pain is substantial enough to be disabling is a question of fact that must be determined according to the circumstances of each individual case. Augustine v. Courtney Const. Co., Etc., 405 So.2d 579 (La.App. 3 Cir.1981), writ den., 407 So.2d 735 (La.1981). Moreover, the issue of the severity of pain by a claimant seeking compensation benefits is a question of fact to be resolved by the trier of fact on the basis of the preponderance of the medical and lay evidence. Hollier v. American Bldg. Systems, Inc., 503 So.2d 701 (La.App. 3 Cir.1987). The trial judge's factual findings, especially those as to the credibility of witnesses, are given great weight and should not be overturned on appeal absent manifest error. The trial judge did not find that plaintiff was disabled because of substantial pain from the work-related injury. On appeal, the trial court's factual findings with regard to the issue of disability are entitled to great weight, and will not be disturbed absent clear error. Culp v. Belden Corp., 432 So.2d 847 (La.1983); Broussard v. Grey Wolf Drilling Co., 562 So.2d 1006 (La.App. 3 Cir.1990), writ den., 567 So.2d 102 (La.1990).
We find that the trial judge correctly applied the "preponderance of the evidence" as the burden of proof that plaintiff had to meet to prove her temporary total disability beyond September 21, 1988. The record supports the trial judge's finding of fact that plaintiff did not meet her burden of proving by a preponderance of the evidence that she was temporarily totally disabled and we do not find that the trial judge was manifestly in error or clearly wrong in making this finding of fact.
For these reasons, the judgment of the trial court is affirmed. All costs of this appeal are taxed against plaintiff-appellant.
AFFIRMED.
KNOLL, J., dissents and assigns reasons.
KNOLL, Judge, dissenting.
For the following reasons, I respectfully dissent.
I disagree with the majority's conclusion that the trial court committed harmless error in applying the wrong burden of proof. As an appellate court, our best source for determining the trial court's reasoning and conclusions is its written reasons for judgment. In the case sub judice, the trial court's reasons explicitly stated that Villagomez, "failed to prove by clear and convincing evidence that she is totally and *1011 permanently disabled.". In my view, this error of law was not harmless error considering that the trial court rejected Villagomez's demands on a "failure to prove rationale".
Under the worker's compensation law prior to 1983, a worker who cannot perform the duties necessary to any gainful employment without experiencing substantial pain resulting from a work-related injury is totally disabled. Wilson v. Ebasco Services, Inc., 393 So.2d 1248, 1251 (La.1981); Sharbono v. H & S Const. Co., 478 So.2d 779, 783 (La.App. 3rd Cir.1985).
Whether a claimant's pain is substantial enough to be disabling is a question of fact that must be determined according to the circumstances of each individual case. Augustine v. Courtney Const. Co., Etc., 405 So.2d 579, 585 (La.App. 3rd Cir.1981), writ denied, 407 So.2d 735 (La.1981). Moreover, the issue of the severity of pain by a claimant seeking compensation benefits is a question of fact to be resolved by the trier of fact on the basis of the preponderance of the medical and lay evidence. Hollier v. American Bldg. Systems, Inc., 503 So.2d 701, 704 (La.App. 3rd Cir.1987). However, in judging the severity of the claimant's pain, the trier of fact's conclusions must be based on its evaluation of the claimant's own testimony because, in the final analysis, the plaintiff is the only one capable of describing his pain. Smith v. Union Underwear, Inc., 457 So.2d 248, 250 (La.App. 3rd Cir.1984).
The trier of fact may accept and accredit greater weight to the testimony of the treating physician rather than that of specialists who were employed merely to evaluate the claimant. Sharbono, supra at 784.
In the case sub judice, the evidence preponderates that Villagomez is disabled due to substantial pain from the work-related injury. At trial, she testified at length about the deep burning pain in her neck which radiates down her right arm. She also testified that she suffers continuous shoulder pain and inability to perform the most simple household tasks. She enjoyed her former job as a hot shot driver and stated that she would return to work if the pain was not so intense.
Her husband, Raymond, related that when his wife attempts to do housework, she complains of severe pain and her neck swells and stiffens. Susan Pratt testified that before the accident Villagomez was a hard working person who was always happy and enjoyed life. However, since the accident Villagomez has become inactive, depressed and her complaints of pain have increased.
In addition, Dr. Llewellyn testified that in four different visits from 1984 to 1988, he detected objective signs of injury which included muscle spasms and restricted movement of the neck, decreased sensitivity and strength of the arms and hands, and, an eruptible disc tear and spinal stenosis at the C5-6 level.
Dr. Blanda observed a decreased range of motion of her neck and crepitation (snapping or cracking) of the right shoulder blade. Moreover, Dr. LaBorde detected tenderness in the sacrum area of her back and near the shoulder blade area and accepted her complaints of pain as genuine. In addition, Dr. Applebaum noted the shoulder blade condition and observed that pressure to the cervical area of the spine produced pain. Lastly, we observe from the record that the trial court was conciliatory in its written reasons for judgment by stating that its denial of disability benefits does not imply that Villagomez was malingering.
Based upon the totality of the record evidence, I would conclude that Villagomez has proven by a preponderance of the evidence that she is disabled because of substantial pain from her work-related injury.
NOTES
[1] The applicable statute is the one in effect at the time of the injury, i.e., April, 1982. Hutchinson v. Livingston Wood Products, 562 So.2d 883 (La.1990); Williams v. State, 489 So.2d 461 (La. App. 3 Cir.1986).