664 So.2d 588 (1995)
Gary ANDERSON, Plaintiff-Appellant,
v.
BIEDENHARN BOTTLING GROUP d/b/a Alexandria Coca-Cola Bottling Company, Defendants-Appellees.
No. 95-646.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1995.
*589 David Peter Daye, Michael L. Glass, Shreveport, for Gary Anderson.
Daniel G. Brenner, Alexandria, for Biedenharn Bottling d/b/a Alexandria Coca-Cola.
Before KNOLL, COOKS and SAUNDERS, JJ.
KNOLL, Judge.
In this worker's compensation appeal, Gary Anderson presents several issues. First, Mr. Anderson argues that the Office of Worker's Compensation (OWC) erred when it failed to award him benefits for temporary total disability (TTD) or supplemental earnings benefits (SEB). He also argues that the OWC erred because it did not find that the defendant refused him medical treatment. He further asserts that the OWC erred in failing to award future medical expenses. Finally, Mr. Anderson argues that the OWC erred since it did not find the defendant arbitrary and capricious in its failure to pay his medical expenses.

FACTS
Gary Anderson, a route salesman for Coca-Cola, was injured in a one-vehicle accident on May 28, 1993, when the delivery truck that he was driving left the road and turned over on its side in a ditch. Immediately after the accident, Mr. Anderson was *590 examined by Dr. G. Daniel Edwards, III, a physician at Cabrini Center for Occupational and Family Medicine. Mr. Anderson told Dr. Edwards that he was not hurt, whereupon Dr. Edwards released him to return to work. Later that day, Mr. Anderson told an accident committee at the Coca-Cola plant that he was not injured. Nevertheless, his condition worsened after that, and Mr. Anderson has not worked since the date of the accident.
Mr. Anderson stated that when he awoke the following day, he felt extreme pain in his lower back and knee. He also said that he was experiencing headaches. He went to the emergency room at Rapides Hospital in Alexandria, where he was given Tylenol-3 and released.
A few days later, Mr. Anderson saw Dr. Bryan McCann, his family physician in Marksville. Mr. Anderson saw Dr. McCann about once every two weeks for the next year. Dr. McCann prescribed various narcotic pain killers and muscle relaxants, and referred Mr. Anderson to Dr. Bruce Razza, an orthopedic surgeon in New Orleans.
On June 17, 1993, Mr. Anderson was examined at defendant's request by Dr. John Patton, a neurologist in Alexandria. Dr. Patton had a CT-scan taken, but could find no objective neurological source of Mr. Anderson's pain. He reported that Mr. Anderson could return to work.
On July 27, 1993, Mr. Anderson was examined by Dr. Bruce Razza, an orthopedic surgeon in New Orleans. Because of Mr. Anderson's complaints of low back pain, Dr. Razza reported that Mr. Anderson could not return to his old job and he placed a light-duty restriction on Mr. Anderson's employment activities. The restrictions indicated that Mr. Anderson could not perform activities involving repetitive lifting of over 20 pounds, prolonged standing or sitting, and repetitive bending, stooping, or climbing. The restrictions further indicated that plaintiff should not lift more than 50 pounds maximum. Dr. Razza's findings were reported to the defendant.
On August 13, 1993, MRI's were performed on Mr. Anderson's lower back and knee. The radiologist who reviewed the MRI's found moderate bulges at L4-5 and L5-S1 levels with no indication of nerve involvement. The MRI of Mr. Anderson's knee indicated a minimal amount of fluid collection in the joint.
In a letter dated September 21, 1993, the defendant offered Mr. Anderson a light-duty position in its warehouse. The offer was specifically tailored to comply with the restrictions placed on Mr. Anderson by Dr. Razza. The letter stated that the position "would not involve repetitive lifting greater than 20 pounds, with a maximum lift in the 50 pound range, will not involve prolonged standing or sitting, repetitive bending, squatting, stooping, or climbing." Mr. Woody Lemoine, the general manager of the Coca-Cola facility, testified that this was a legitimate offer of employment, and that there were other employees who had worked in this capacity in the warehouse. He stated that Mr. Anderson's duties would include stacking empty cases, pouring out spoiled product, checking inventory, and sweeping up. Mr. Lemoine stated that the position would pay the same as Mr. Anderson's previous position. The letter requested that Mr. Anderson report to work on Monday, September 27, 1993.
After receipt of the September 21 letter, Mr. Anderson saw Dr. Razza again on September 23, 1993, and he complained of progression of the pain in his back and knee. There is some confusion in the record as to what Mr. Anderson told Dr. Razza about the light-duty position that he had just been offered. Dr. Razza states in his report that Mr. Anderson presented a letter that suggested that light-duty work was available, and that he discussed the possibility of light-duty work with Mr. Anderson. Mr. Anderson denies showing the September 21 letter to Dr. Razza, and he says that he told Dr. Razza that he thought that he was expected to perform his old job as route salesman.
Dr. Razza stated that as long as his pain level allowed, there would be no absolute contraindication from an orthopedic standpoint of attempting employment within his restrictions. Nevertheless, Dr. Razza indicated *591 that because of the progression of Mr. Anderson's symptoms and the severity of his complaints, he recommended that Mr. Anderson refrain from any gainful employment. Dr. Razza further recommended that Mr. Anderson have a facet block performed on his back along with arthroscopic surgery for his knee. Based on the recommendation of Dr. Razza, Mr. Anderson did not report for work on September 27, 1993.
Mr. Anderson testified that he thought he was being offered his old position of route salesman. His position as route salesman was definitely not light-duty, as it entailed the delivery of cases of Coca-Cola products to grocery stores in the area surrounding Alexandria. The record shows that although the September 21, 1993, letter was extremely specific in its offer of light-duty employment, subsequent letters did not mention the light-duty restrictions. Mr. Anderson testified that no mention of light-duty work was made in his discussions with Mr. Woody Lemoine.
On October 21, 1993, Mr. Anderson was examined at defendant's request by Dr. Frank X. Cline, an orthopedist in Monroe. Near the end of the examination, a verbal altercation occurred between Mr. Anderson and Dr. Cline, and the examination was terminated. Mr. Anderson stated that Dr. Cline's examination was rough, heavy-handed, and excruciatingly painful. Dr. Cline refuted Mr. Anderson's characterization of the examination. He stated that as the examination progressed, Mr. Anderson became extremely uncooperative and began yelling that none of the doctors treating him could appreciate how badly he was hurting.
Dr. Cline stated in his report that he saw no objective indications of injury in Mr. Anderson, and that he suspected that Mr. Anderson was exaggerating his injuries. He stated that Mr. Anderson had probably suffered a back strain which should have healed within three months of the accident. He further stated that Mr. Anderson could return to work of any type.
Immediately following the abortive examination with Dr. Cline, Mr. Anderson went to the Glenwood Regional Medical Center and received a pain shot. Mr. Anderson also stopped at the emergency room at Bunkie General Hospital on the way home and requested an additional pain shot.
Based on the report of Dr. Cline, a letter was sent to Mr. Anderson requesting that he return to work on November 3, 1993. Although this letter is dated "September 29, 1993" it is apparent that the actual date of this letter is October 29, 1993. This is evidenced by the fact that the letter could not have been sent prior to Dr. Cline's examination which occurred on October 21. Further, the record reflects that the letter was sent by certified mail on October 29, 1993. Mr. Anderson did not report for work on November 3, 1993, and on November 6, 1993, Mr. Anderson's employment with Coca-Cola was terminated.
Mr. Anderson moved to Lafayette in late November of 1993. Mr. Anderson testified that he attempted to treat with Dr. Cobb and Dr. Blanda in Lafayette, but he stated that they told him that his insurer would not approve treatment. In the following months, the record shows that Mr. Anderson frequently went to the emergency rooms of several hospitals in the area and requested pain shots. On May 13, 1994, a facet block was performed by Dr. Razza. The results of the procedure were negative. Mr. Anderson stated that his pain has increased and that he is unable to perform work of any kind.

TEMPORARY TOTAL DISABILITY
Compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence that he or she is physically unable to engage in any employment or self-employment. The employee must discharge this burden unaided by any presumption of disability. La.R.S. 23:1221. The existence of pain is not relevant to the question of temporary total disability benefits. Rosella v. DeDe's Wholesale Florist, 607 So.2d 1055 (La.App. 3 Cir.1992).
The hearing officer found that Mr. Anderson failed to prove temporary total disability by clear and convincing evidence, and she gave detailed reasons for her findings.
*592 She stated in her written reasons for judgment:
Plaintiff's continuing complaints of pain after that day are well documented by his numerous visits to the emergency room and his complaints to examining physicians. His complaints of severe, disabling pain are made suspect, however, by observations of these physicians noted in the record that plaintiff was usually able to move without apparent difficulty and the lack of objective findings to support his complaints of severe, disabling pain. His complaints, when combined with physical findings on examination, do not ring true. Whether plaintiff's pain is magnified or whether plaintiff is a malingerer is not clear. Although an MRI has revealed disc bulging, there is no evidence of herniation or nerve involvement. Considered, with all other medical evidence, Dr. Cline's testimony is accepted as true that there appears to be normal hydration, which indicates that no disc degeneration exists due to desiccation, which would also indicate normal disc content. Physicians indicate that it is not unusual for a man of plaintiff's age to have bulging discs and, although bulging, the discs are normal. Dr. Razza testified that the MRI reflected only a mild degree of indentation of the thecal sac, the covering of the spinal nerves. There is no impingement on the nerves. Further, the knee effusion reflected by MRI is minimal. No swelling has been detected on physical examination and Dr. Razza testified that the knee condition would not prevent plaintiff from working.
Disability can be proved by both lay and medical testimony. The hearing officer should weigh all evidence, medical and lay, in order to determine whether or not the worker has met his burden. Simpson v. S.S. Kresge Co., 389 So.2d 65 (La.1980). Whether or not Mr. Anderson is temporarily totally disabled is a question of fact. The hearing officer's findings on this issue should be given great weight, and should not be overturned on appeal unless clearly wrong. Prim v. City of Shreveport, 297 So.2d 421 (La.1974); Johnson v. Ins. Co. of No. America, 454 So.2d 1113 (La.1984). La.R.S. 23:1317 provides in part:
The hearing officer shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based upon competent evidence and all compensation payments provided for in this Chapter shall mean and be defined to be for only such injuries as are proven by competent evidence, or for which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself. (Emphasis added).
Mr. Anderson's symptoms were for the most part subjective. The CT-scan taken by Dr. Patton was negative and the results of the MRI were disputed by the parties. The hearing officer considered all of the testimony and resolved the MRI dispute in favor of the defendant. We find no manifest error in the hearing officer's decision to credit the statements of Drs. Patton and Cline regarding Mr. Anderson's ability to return to work. Also, considering Dr. Razza's impression that there was no objective reason why Mr. Anderson could not perform light-duty work, we cannot say that the hearing officer erred in finding that Mr. Anderson failed to prove his temporary total disability by clear and convincing evidence.

SUPPLEMENTAL EARNINGS BENEFITS
Mr. Anderson asserts that the hearing officer applied the incorrect burden of proof in refusing to award supplemental earnings benefits (SEB). In her written reasons for judgment, the hearing officer stated: "It is the finding of the Office of Workers' Compensation that plaintiff has not carried his burden of proof by clear and convincing evidence as to temporary total disability or as to partial disability which would entitle him to supplemental earnings benefits." We recently stated in McClinton v. Rapides General Hospital, 93-1295 (La. App. 3 Cir. 5/4/94); 640 So.2d 534, writ denied, 94-1438 (La. 9/23/94); 642 So.2d 1290:
To qualify for Supplemental Earnings Benefits, a claimant must prove by a preponderance of the evidence that a work related *593 injury resulted in his inability to earn wages equal to 90% or more of his wages at the time of injury. Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989); Tassin v. Cigna Ins. Co., 583 So.2d 1222 (La.App. 3d Cir.1991); Clark v. Welex, a Halliburton Co., 517 So.2d 1186 (La.App. 3d Cir.) writ denied, 521 So.2d 1170 (La. 1988). The next step in the analysis is an examination of what the employee is earning or is able to earn. LSA-R.S. 23:1221(3)(c)(I); Daigle, supra. The most logical interpretation of this provision is that the employer, if he wishes to contend that the employee is earning less than he is able to earn, bears the burden of proving that the employee is physically able to perform a certain job and that the job was offered to the employee or is available to the employee in his or the employer's community or reasonable geographic region. Daigle, supra; Hebert v. Grey Wolf Drilling, 611 So.2d 674 (La.App. 3d Cir.1992); Tassin, supra; Clark, supra. McClinton, 640 So.2d at 536.
Appellant contends that there is absolutely no unusual standard of proof contained anywhere in the SEB portion of the worker's compensation statutes. A simple reading of La.R.S. 23:1221(3)(c)(ii) reveals the following language:
(ii) For purposes of Subsubparagraph (I) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment. (Emphasis added).
Under La.R.S. 23:1221(3)(c)(ii), if the employer proves that the employee was offered and declined a job that he was physically able to perform, the employee may still recover SEB if he can show by clear and convincing evidence that he was unable to perform solely as a result of substantial pain. In the recent case of Lachney v. Delaney, 628 So.2d 46 (La.App. 3 Cir.1993), writ denied, 93-3090 (La. 2/25/94); 632 So.2d 764 we stated:
Under LSA-R.S. 23:1221(3), an injured employee is entitled to SEB if, by reason of the injury, the employee is unable because of substantial pain, to engage in any employment or self-employment. The circumstances necessary to support such an award must be established by clear and convincing proof, unaided by any presumption of disability, that solely as a consequence of substantial pain, plaintiff was unable to engage in any employment or self-employment. Rosella v. Dede's Wholesale Florist, 607 So.2d 1055 (La.App. 3d Cir.1992), and cases cited therein. Lachney, 628 So.2d at 49. (Emphasis added).
In the case sub judice, Mr. Anderson was tendered employment within the restrictions set by his physician. The record indicates that the sole reason that Mr. Anderson declined this employment was the pain that he was experiencing. Therefore the hearing officer was correct under La.R.S. 23:1221(3)(c)(ii) in applying the clear and convincing standard to Mr. Anderson's claims for SEB.
Mr. Anderson further contends that the hearing officer erred in her assessment of the facts in determining that plaintiff was not entitled to SEB. As part of this assertion, he contends that the hearing officer erred in determining that plaintiff's complaints of severe and disabling pain were not credible. In Lachney, 628 So.2d 46, we further stated:
Pain experienced by a claimant seeking compensation benefits is a question of fact to be resolved by the trier of fact. The physical inability of a claimant to return to work due to substantial pain is a question of fact and will not be disturbed unless clearly wrong. The degree of pain is a factual determination which depends to a great extent on the trial judge's evaluation of the claimant's credibility. Hollier v. American Bldg. Systems, Inc., 503 So.2d 701 (La.App. 3d Cir.1987), and cases cited therein. See also, Adams v. NOLA Fleet Shipyard, 617 So.2d 88 (La.App. 4th Cir. *594 1993); Lewis v. Orleans Materials, 614 So.2d 316 (La.App. 4th Cir.1993).
A court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong". Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Alfred v. Mid-South Machine, Inc., 594 So.2d 937 (La.App. 3d Cir.1992). Also, Villagomez v. Howard Trucking Co., 569 So.2d 1006 (La. App. 3d Cir.1990).
We agree with the hearing officer that Mr. Anderson failed to prove by clear and convincing evidence that solely as a result of substantial pain, he was unable to perform the employment tendered. There is ample evidence in the record to support the hearing officer's findings. Although the conclusions derived from the MRI's are disputed by the parties, the X rays and CT-scans taken by Dr. Patton revealed no objective sources of pain. Finally, the hearing officer viewed Mr. Anderson's demeanor and heard his testimony firsthand. We cannot say that the hearing officer was clearly wrong in her factual findings.

PAST MEDICAL TREATMENT
Mr. Anderson asserts that the hearing officer erred in failing to find that defendant refused medical treatment to him. Further, he asserts that the hearing officer failed to find defendant arbitrary and capricious in failing to pay his medical expenses. Mr. Anderson asserts that he is entitled to attorney's fees under La.R.S. 23:1201(E) and 23:1121(C).
The hearing officer found that although defendant's adjuster received copies of Dr. Razza's reports reflecting the possibility of arthroscopy, no evidence was adduced indicating that a specific demand was ever made for this procedure. Further, she found that the record revealed no demand for additional medical treatment or for payment of medical expenses. She stated that Mr. Anderson "simply needed to show that he requested approval for the procedure and it was denied. The plaintiff has not met his burden in this regard."
In order to recover statutory penalties under La.R.S. 23:1201(E), the nonpayment of medical expenses must not result from conditions over which the employer has no control. In order to recover under La.R.S. 23:1121(C), the withholding of consent must be arbitrary and capricious. Therefore, a requisite for recovery under these statutes is a demand made upon the employer.
Our review of the record reveals no demand was made to defendant for medical treatment or for payment of medical expenses. To the contrary, the record reveals that the defendant timely paid all medical bills submitted. Dr. Razza's suggestion that an arthroscopy may be required does not rise to the level of a demand for treatment. Similarly, defendant's statement that Drs. Cobb and Blanda told him that his claims adjuster had refused to authorize treatment is insufficient to prove that the defendant was arbitrary and capricious in withholding medical treatment. Finally, with regard to the unpaid pharmacy invoice, the evidence adduced at trial was insufficient to prove that demand for payment was made on the defendant.

FUTURE MEDICAL TREATMENT
Finally, Mr. Anderson contends that the hearing officer erred in denying future medical treatment.
La.R.S. 23:1203 provides that the employer shall reimburse the employee for all necessary medical treatments required as a result of his work-related injury. A worker's right to medical treatment is independent to his right to benefits for TTD or SEB. Augustine v. Paul Wall Truck Line, Inc., 603 So.2d 770 (La.App. 3 Cir.), writ denied, 608 So.2d 193 (La.1992).
Nevertheless, an award for an injured employee's medical bills cannot occur until the expenses are actually incurred. Wilson v. Ebasco Services, Inc., 393 So.2d 1248 (La.1981); Thomas v. Highlands Insurance Co., 617 So.2d 877 (La.1993). Therefore, while the right to claim reimbursement for future medical expenses is reserved to Mr. Anderson, the hearing officer *595 was correct in refusing to award future medical treatment at this time.
For the foregoing reasons, the judgment of the hearing officer is affirmed. Costs of this appeal are assessed to plaintiff.
AFFIRMED.
SAUNDERS, J., dissents.