636 So.2d 1146 (1994)
Kenneth SCHEXNYDER, Appellant,
v.
PMB OPERATORS, Appellee.
No. 93-1178.
Court of Appeal of Louisiana, Third Circuit.
May 4, 1994.
Rehearing Denied June 20, 1994.
*1147 Michael Lester Schilling Jr., Abbeville, for Kenneth Schexnyder.
Philip E. Roberts, Lafayette, for PMB Operators.
Before GUIDRY, DOUCET and COOKS, JJ.
DOUCET, Judge.
In this workers' compensation suit, plaintiff, Kenneth Schexnyder, appeals the judgment of the trial court dismissing his claims for continued benefits.
The record shows plaintiff began working for the defendant, PMB Operators (PMB), in August of 1988 as a roustabout. Plaintiff claims he injured his back at work on January 26, 1990, when he lifted sacks weighing 110 pounds each. PMB's workers' compensation insurer classified plaintiff as a part-time employee and paid him temporary total disability benefits.
Plaintiff filed suit against the defendant alleging he was a full-time employee and claiming he was entitled to an increase in weekly benefits. On September 13, 1991, prior to trial, the workers' compensation insurer terminated plaintiff's benefits. Thereafter, counsel for both parties filed a joint motion which requested that the scope of the trial be expanded to include "the extent of the disability, if any, and the entitlement to continued benefits."
The trial court found the plaintiff was a part-time employee, the proper rate of temporary total benefits was $50.00 per week, and that plaintiff was not entitled to further benefits. Plaintiff appeals.
The main issue at trial was whether or not plaintiff was a part-time employee. Plaintiff asserts the hearing officer erred in classifying plaintiff as a "part-time" employee within the meaning of the workers' compensation statute. We disagree.
La.R.S. 23:1020(9) defines a "part-time" employee as one "who as a condition of his hiring knowingly accepts employment that (a) customarily provides for less than forty hours per work week, and (b) that is classified by the employer as a part-time position." In Johnson v. Travelers Insurance Company, 509 So.2d 519 (La.App. 3 Cir.), writ denied, 510 So.2d 378 (La.1987), this court considered the meaning of the statutory definition and stated:
It is incumbent upon employers to define "part-time" status of certain employees and to establish some procedure to satisfy the criterion that the employee had knowingly taken a part-time job.
Plaintiff contends that he did not "knowingly" accept part-time employment. At trial, plaintiff introduced into evidence a group health insurance policy to support his claim. It is uncontested that only full-time employees were eligible for coverage under the policy. Plaintiff claims he believed he obtained full-time status with the defendant because the defendant allowed him to participate in the health insurance coverage.
*1148 During cross-examination, plaintiff admitted that when he was hired, he was informed his employment was on a part-time basis. Plaintiff also admitted he told the insurance adjuster investigating his accident he was a part-time employee.
Mrs. Charlotte Davis, vice-president of PMB Operators, testified that PMB did not hire roustabouts on a full-time basis. She told the plaintiff that he was a part-time employee. Mrs. Davis explained that while the health insurance plan available at PMB was for full-time employees only, defendant allowed plaintiff's enrollment as a favor to him. According to Mrs. Davis, the health insurance company did not request proof of employment status, thus his enrollment was not prohibited.
Plaintiff also argues that, based on the holding in Johnson, supra, in order for an employer to establish an employee knowingly accepted a part-time position, the employer must obtain a written agreement from the employee which shows the employer was accepting employment on a part-time basis and which reasonably explains the consequences of accepting part-time employment.
Plaintiff's interpretation of Johnson is erroneous. In Johnson, this court incorporated the trial court's written reasons for judgment in its opinion. The trial court suggested that an employer could protect itself by drafting such a document. Further, the record in this case contains objective evidence in the form of testimony by the plaintiff and an employee of the defendant that the employee knowingly accepted part-time employment.
Considering the evidence contained in the record, we conclude the hearing officer's finding that plaintiff knowingly accepted part-time employment is sufficiently supported by the record.
Plaintiff also argues that the hearing officer improperly applied the second part of the statutory definition which requires that part-time work must customarily provide less than 40 hours per work week. This argument is based on language contained in the concurrence opinion in Johnson v. Travelers Insurance Co., supra, which addressed this issue.
The facts in Johnson are distinguishable from the case herein. In Johnson, the claimant was "always available for work." In this case, plaintiff's claim that he was always available for work was disputed. Further, after reviewing the evidence contained in the record, including the payroll records, we find plaintiff's employment customarily provided for less than 40 hours of work per week. Specifically, in 1988, plaintiff only worked 40 or more hours for four of the 19 weeks he was employed by defendant. In 1989, plaintiff only worked 40 or more hours for 15 of 52 weeks. Thus, the hearing officer's ruling was correct.
Plaintiff asserts the hearing officer erred in finding that $50.00 per week is the proper weekly benefit.
Plaintiff's payroll records show plaintiff was paid on an hourly wage basis at the rate of $5.00 an hour. LSA-R.S. 23:1021(10)(a)(iii) states:
If the employee is paid on an hourly basis and the employee is a part-time employee, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the injury.
Plaintiff's payroll records show plaintiff worked 40 hours in the four weeks preceding the week of his alleged accident on January 26, 1990. Using these figures in the mathematical formula provided in the statute for part-time employees, the average weekly wage is $50.00. Therefore, the trial court's finding is correct.
Plaintiff contends, among other things, he is entitled to $74.00 per week, the minimum benefit payment allowed pursuant to LSA-R.S. 23:1202. The statute, however, also provides that if an employee's wages are less than the applicable minimum compensation amount, then the employee's "wages" shall be his compensation rate. LSA-R.S. 23:1202(A)(2). Thus, this argument is without merit.
In his brief before this court, plaintiff claims to have earned an additional amount of $117.50 for 23.5 hours of work in the week of January 8, 1990, which is not reflected in *1149 the payroll records. However, plaintiff entered no evidence into the record in support of this claim. We find the payroll records most accurately reflect plaintiff's payment record and number of hours worked for the 15 months plaintiff was employed by defendant. Any payment, if made and omitted from the records, could have easily been proven by means of a pay check stub or bank deposit slip. Thus, these hours have not been considered in calculating plaintiff's average weekly wage.
Plaintiff asserts the hearing officer erred in finding he is not entitled to further benefits.
Plaintiff has alleged he suffered a work-related injury on January 1, 1990. Thus, his entitlement to temporary total disability benefits is governed by the newly amended version of LSA-R.S. 23:1221(1). By Act No. 454, § 6 of 1989, effective January 1, 1990, the legislature redefined LA-R.S. 23:1221(1) by adding subparagraph (1)(c) which states:
(c) For purposes of Subparagraph (1)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (1)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
The amendment heightened a claimant's burden of proof. In construing LSA-R.S. 23:1221(1) since the amendment, this court stated:
The amendment, effective January 1, 1990, clearly heightened the claimant-employee's burden of proof. In fact, the burden of proof required for establishing temporary total disability following the effective date of the amendment is exactly the same as the burden of proving permanent total disability. See La.R.S. 23:1221(2)(c); Johnson, Workers' Compensation, 50 La. L.Rev. 391, 400 (1989).
In light of this change, we are guided by the jurisprudence interpreting the plaintiff's burden of proof for permanent total disability following the 1983 amendment of the Workers' Compensation Act since we are unaware of any jurisprudence interpreting La.R.S. 23:1221(1)(c) following its amendment. Specifically, in Whatley v. Hartford Accident and Indemnity Company, 509 So.2d 671 (La.App. 3rd Cir.1989), writ denied, 512 So.2d 441 (La. 1987), this court reasoned:
"The legislature has made it clear that even if plaintiff is in pain, he must work unless he proves by clear and convincing evidence that he is physically unable to engage in any employment or self-employment as described in LSA-R.S. 23:1221(2)(c).
"Arguments that the employee is working in pain, or would have to work in pain, after his injury will have greatly reduced importance after the 1983 amendments. This was clearly the intendment of the amended provisions.
In a total and permanent disability argument, pain will not have no role to play at all. The fact that an employee can work but only in substantial pain will not make him totally disabled, since he must prove that there is no job he can do, even in "any" pain." Malone & Johnson, Louisiana Civil Law Treatise Worker's Compensation § 277 (Supp. 1987)."
Rosella v. Dede's Wholesale Florist, 607 So.2d 1055, 1060 (La.App. 3 Cir.1992).
The record in this case shows the plaintiff failed to establish by clear and convincing evidence that he was physically unable to engage in any employment or self-employment within the meaning of LSA-R.S. 23:1221(1)(c), supra, following his accident.
Dr. Shepard, an orthopedic surgeon, testified by deposition. He treated plaintiff from June 14, 1990, through September 30, 1991. Dr. Shepard examined the plaintiff and ordered an electromyocardiogram (EMG) and *1150 nerve conduction tests. Thereafter, Dr. Shepard diagnosed plaintiff's condition as spondylolysis of the spine. He recommended plaintiff receive physical therapy and prescribed pain medication. After five months of treatment, plaintiff continued to complain of pain. At this time, Dr. Shepard recommended plaintiff consider having surgery. By January 31, 1991, Dr. Shepard determined plaintiff had reached maximum improvement. On July 30, 1991, Dr. Shepard assigned a 5% impairment rating to the plaintiff and restricted him from heavy manual labor and heavy lifting.
Dr. Shepard confirmed the impairment rating and the physical restrictions would have been placed on the plaintiff whether or not plaintiff had been experiencing pain and whether or not the 1990 work-related accident occurred. Most importantly, as of July 30, 1991, Dr. Shepard believed plaintiff was capable of working.
On this issue, plaintiff testified only that he continued to experience pain in his back. Plaintiff entered into evidence a letter dated December 11, 1991, and written by Dr. Blanda, an orthopedic surgeon who treated plaintiff for a 1976 back injury. Dr. Blanda indicated that the plaintiff's condition is categorized as a 20% impairment of the whole body. Dr. Shepard disagreed with Dr. Blanda's statement and testified as follows:
The American Academy of Orthopedic Surgeons assigns a twenty percent whole body impairment rating if a person has spondylolysis or grade one or grade two spondylolisthesis demonstrable on x-ray with persistent muscle spasm, rigidity and pain, with degenerative changes, osteoarthritic lipping.
I never saw muscle spasm. I never saw rigidity. And the word is persistent. So I would not say this man has persistent muscle spasm. On no occasion did I note muscle spasm. Therefore, the twenty percent would not be applicable in this situation.
(BY MR. ROBERTS) Okay. After having reviewed the formula produced by the American Academy of Orthopedic Surgeons, do you still stand by your original opinion of the five percent rating? Yes.
Records of Dr. Blanda entered into evidence by the defendant show that Dr. Blanda treated plaintiff from 1977 to 1981 for a back injury he received while working as a heavy manual laborer at 19 years of age. Dr. Blanda diagnosed plaintiff's condition as spondylolysis. He recommended plaintiff undergo a laminectomy and fusion.
The medical records of Dr. Budden entered into evidence by both parties reveal plaintiff was originally treated by Dr. Latour. While a tomography report ordered by Dr. Latour showed no evidence of a herniated disc, it did reveal "bilateral spondylolysis without spondylolisthesis." Dr. Latour referred plaintiff to Dr. Budden, an orthopedic surgeon. Dr. Budden believed plaintiff's symptoms were due to musculoligamentous strains of the lumbar spine. After treating plaintiff from March 1990 through May 1990, Dr. Budden referred plaintiff to Dr. LaBorde, a rehabilitation specialist. Dr. LaBorde administered an EMG and nerve conduction studies on May 31, 1990. He diagnosed plaintiff's condition as a muscular injury or strain. He also stated he did not believe plaintiff's problems were caused by his spondylolysis condition. On June 19, 1990, Dr. LaBorde performed a thermogram study in the neck and back areas to detect nerve problems and muscle spasms. While the cervical study had abnormal results, the lumber study was normal. However, Dr. LaBorde still believed plaintiff's complaints were of a muscular origin.
The record as a whole supports the finding that plaintiff is disabled. However, plaintiff offered no evidence to show that he is unable to engage in any job. Cross-examination of the plaintiff revealed that since his work-related injury in 1976 at age 19, he worked sporadically at various types of jobs until his employment with defendant in 1988. Plaintiff presented no testimony or other evidence to indicate he had attempted to gain any employment. Neither did he show he was not qualified to perform any work other than hard labor. Dr. Shepard believed plaintiff was capable of working and restricted him only from performing heavy manual labor and heavy lifting.
*1151 After reviewing the record in its entirety, we find the administrative hearing officer's denial of temporary total benefits was supported by the evidence. However, we find the interest of justice requires the matter be remanded to the Office of Workers' Compensation Administration to provide plaintiff the opportunity to present evidence on the issue of whether he is entitled to payment of supplemental earnings benefits (SEB). C.C.P. art. 2164.
Inasmuch as we concluded the administrative hearing officer's denial of benefits was correct, we need not consider plaintiff's claim for penalties and attorney's fees.
For the foregoing reasons, the judgment of the hearing officer is affirmed at plaintiff's cost, and the case is remanded for the reasons set out in this opinion.
AFFIRMED AND REMANDED.