JaLOTTINGER, Chief Judge.
The primary issues presented in this workers’ compensation case are: 1) whether plaintiff suffered a neck injury on May 15, 1993; 2) whether plaintiff is entitled to temporary total disability benefits or supplemental earnings benefits; 3) whether plaintiff is entitled to medical benefits for an alleged psychological injury; and 4) whether plaintiff is entitled to penalties and attorney fees.
FACTUAL BACKGROUND
Plaintiff, Judy Ann Guidry, is a licensed practical nurse. On February 7, 1991, while employed by Houma Health Nursing Care, plaintiff was injured when she was attached by a nursing home resident. Plaintiff sustained a cervical disc rupture at C5-6 for which she underwent surgery on July 28, 1992. Plaintiff also began psychological care following this incident. On December 31, 1992, plaintiff returned to work at the same facility performing her former duties as a licensed practical nurse. Plaintiff was discharged by her orthopedic surgeon, Dr. Phillips, on April 1, 1993. At the time of discharge, Dr. Phillips noted that plaintiff had had no neck problems since her return to work. Although physically able to return to work, plaintiff continued her psychological care with Dr. Gerald Murphy, D.S.W.
During the time that plaintiff was out of work, Houma Health Nursing Care sold its business to Maison DeVille Nursing Home. Houma Health Nursing Care was insured by Commercial Union Insurance Company. Maison DeVille is self-insured.
After returning to work at Maison DeVille for approximately five months, plaintiff was involved in a second work related incident. While administering medication to a female patient on May 15,1993, the patient grabbed the lapels of plaintiffs uniform and jerked plaintiff toward the bed. Plaintiff filed a formal accident report stating that she experienced immediate neck and shoulder pain.[1] *384 Following the incident, plaintiff experienced increasing pain and eventually returned to Dr. Phillips. Dr. Phillips diagnosed a new neck injury at the C6-7 level.
|8On August 27,1993, plaintiff resigned her position at Maison DeVille. She began working for Healing Hands Home Care, receiving her first paycheck for the pay period from October 2, 1993 to October 15, 1993. While employed at Healing Hands, plaintiff continued orthopedic and psychological care. Then on May 19, 1994, plaintiff was involved in an automobile accident and suffered neck and back injuries. Plaintiff quit her job at Healing Hands on May 27,1994.
Plaintiff contends that she is currently totally disabled due to the neck injury she received in May of 1993 while working at Maison DeVille and due to her continuing emotional problems which are associated with the incident. She filed suit seeking workers’ compensation benefits, penalties and attorney fees. Following trial on the merits, the hearing officer found that plaintiff did not receive a new injury in 1993; that plaintiff was not disabled as a result of the 1993 accident and therefore, not entitled to compensation benefits; that plaintiff was not entitled to benefits for her psychological injury; and that plaintiff was not entitled to penalties and attorney fees.
MAY 15, 1993 INJURY
The first issue raised by plaintiff is whether her neck injury at C6-7 is related to the May 15,1993, incident.
In his reasons for judgment, the hearing officer determined that Dr. Phillips and plaintiff were not credible witnesses. Based on this determination, the hearing officer accepted the opinion of a second doctor, Dr. Cenac, who concluded that plaintiff did not suffer a new injury in the 1993 accident. Dr. Cenac concluded that plaintiffs injury and pain were associated with an ongoing degenerative process. Furthermore, any disability which plaintiff experienced was associated with the lumbar injury she sustained in the 1994 automobile accident.
A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Weatherford v. Commercial Union Insurance, 94-1793, 94-1927, p. 5 (La. 2/20/95); 650 So.2d 763, 765-66; Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). If the trial court or jury findings are reasonable in light of the record | reviewed in its entirety, the court of appeal may not reverse those findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Weatherford, 650 So.2d at 766; Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Ferrell v. Fireman’s Fund Insurance, Co., 94-1252, p. 4 (La. 2/20/95); 650 So.2d 742, 745-46; Rosell, 549 So.2d at 844. When findings are based on determinations regarding the credibility of witnesses, the manifest error/clearly wrong standard demands great deference to the trier of fact’s findings. Ferrell, 650 So.2d at 746; Rosell, 549 So.2d at 844. An appellate court may find manifest error or clear wrongness in a finding purportedly based upon a credibility determination where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story. Ferrell, 650 So.2d at 746; Stobart, 617 So.2d at 882. This principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts. Weatherford, 650 So.2d at 766.
After a thorough review of the record, we conclude that the hearing officer was manifestly erroneous in determining that Dr. Phillips was not credible. The hearing offi *385 cer gave four reasons for questioning Dr. Phillips’ credibility:
(1) he has the plaintiff listed as temporarily totally disabled even though she is working full time for another nursing operation; (2) he speaks of the fusion he has done and the fact that it appears solid, yet he never did a fusion. He did an anterior cervical discectomy without a fusion; (3) he states that the plaintiffs disc at C6-7 isn’t bad enough to operate on anyway, yet he would schedule her in a week if she came in and told him the pain was too bad; and (4) he denied a C6-7 disc protrusion in the March of 1991 MRI report, yet later admitted there was a disc bulge at the C6-7 level in the March of 1991 report and that protrusion and bulge are interchangeable. He admitted that the C6-7 disc was already herniated according to the March, 1991 MRI report yet now the herniation is bigger, although he cannot say how much bigger.
We address these four reasons separately. First, Dr. Phillips listed plaintiff as temporarily totally disabled although plaintiff continued to work from October 1993 through May 1994. There was no testimony that Dr. Phillips was aware that plaintiff was working during this time period. Dr. Philips testified that he could not recall if plaintiff ever told him that she was |5working and his office notes of November 2, 1993, and December 21, 1993, reflect that plaintiff was to limit her activities and not work. The fact that a person chooses to work in pain does not discredit a physician’s opinion regarding the person’s disability status.
Second, the hearing officer makes much of the fact that Dr. Phillips referred to plaintiff as having had a fusion when in fact he performed a cervical discectomy without a fusion in 1992. In the operative report of July 28, 1992, Dr. Phillips stated, “I did not feel that she was a candidate for an arthrodesis because I did not want to leave a graft in a diabetic patient.... We removed some of the osteophyte. We retained the rest and roughed the areas hoping that a spontaneous fusion would occur.” Thereafter Dr. Phillips was of the opinion that the spontaneous fusion hoped for had taken place and he so stated in his reports and deposition. In a November 14, 1994, report, Dr. Cenac also recognized that “[t]he MRI of the cervical spine confirms bony fusion.” Both physicians agreed and the documents reflect that there was a fusion. This was not a basis for the hearing officer to discredit Dr. Phillips.
Third, the hearing officer discredited Dr. Phillips because Dr. Phillips “states that plaintiffs disc at C6-7 isn’t bad enough to operate on anyway, yet he would schedule her in a week.” The hearing officer has taken this statement out of context. In answering the question of whether plaintiff has had an MRI since the 1994 auto accident, Dr. Phillips replied, “I haven’t had another cervical MRI. You know, it would be interesting from a medical-legal standpoint. From a medical standpoint it isn’t because she isn’t bad enough to operate on anyway.” Earlier in his testimony Dr. Phillips clearly stated that “I would operate on her because the imaging [referring to the 1993 MRI] is bad enough to do it.” Upon reviewing Dr. Phillips’ comments in context, it is clear that he concluded that plaintiffs disc is bad enough to operate on.
Finally, the hearing officer called Dr. Phillips’ credibility into question because the doctor initially stated that the 1991 MRI showed no abnormality at the C6-7 level and then later admitted that the MRI detected a small bulge at this level. However, Dr. Phillips also stated that the 1993 MRI, taken after plaintiffs second job related accident, detected a “new” bigger herniation of the C6-7.
An appellate court may find manifest error or clear wrongness in a finding purportedly based upon a credibility determination when that credibility determination is not 16supported by documents or objective evidence contained in the record or is internally inconsistent or implausible. Ferrell, 650 So.2d at 746; Stobart, 617 So.2d at 882. Upon review, we find that three of the four reasons given by the hearing officer for discrediting Dr. Phillips’ testimony are not supported by the record. While there is some basis for the hearing officer’s fourth reason, this reason alone is insufficient to discredit Dr. Phillips’ testimony and opinion regarding plaintiffs condition. Because the hearing of- *386 fleer’s finding regarding plaintiff’s injury, was based largely on the unsupported determination that Dr. Phillips was not credible, we find that the hearing officer committed manifest error in finding that plaintiff did not suffer an injury on May 15,1993.
As a workers’ compensation claimant, plaintiff had to prove to a legal certainty and by a preponderance of the evidence the nature and extent of her disability. Jaeckle v. Dresser Industries, Inc., 457 So.2d 646, 648 (La.1984). The diagnosis and opinion of her treating physician is entitled to more weight than those of doctors examining her for consultation for litigation purposes only. Id. Accordingly, the opinion of Dr. Phillips should be given more weight than the opinion of Dr. Cenae.
Initially, we note that both doctors agreed that plaintiff had a serious preexisting degenerative condition at the C6-7 level which was reflected in the 1991 MRI taken after the first accident. The MRI report stated that plaintiff had osteophytie spurs throughout the cervical spine; there was an annular bulge at the C6-7 disc; there was congenital spinal stenosis with decreased AP diameter from C-3 through C-7; and there were central bulges at C4-5 and C6-7 without cord compression.
The doctors disagreed on whether the 1993 MRI, taken after the second accident, reflects an aggravation of the preexisting condition or a mere progression of the degenerative disease. While the 1993 MRI report confirmed many of the findings of the 1991 report, it also notes moderately large disc and spur protrusions at C6-7 and moderate cervical spondylosis at C6-7 sufficient to compress the cervical cord and narrow its AP diameter. Dr. Phillips opines that the presence of the much larger disc protrusion confirms that the 1993 accident aggravated plaintiffs preexisting condition. On the other hand, Dr. Cenac contends that the report reflects nothing more than a description of plaintiffs ongoing degenerative process. In giving more ^weight to the opinion of Dr. Phillips as the treating physician, we conclude that the second accident aggravated plaintiffs preexisting condition.
It is clear that plaintiff may recover workers’ compensation benefits for aggravation of her preexisting degenerative disc upon proof that she was symptom free prior to the aggravating accident. Rogers v. Pizza Hut, 547 So.2d 1092, 1095 (La.App. 1st Cir.), writ denied, 552 So.2d 384 (La.1989). Following surgery, plaintiff returned to her job on December 31, 1992. While plaintiff testified that she experienced some minor discomfort when she first returned, she regained her ability to perform her job duties and did so for several months with no complaints of neck pain to Dr. Phillips or Dr. Murphy. Because plaintiffs neck was “okay”, Dr. Phillips discharged plaintiff from his care in April of 1993. The accident report, filed by plaintiff at the time of the May 1993 accident, reflects that plaintiff experienced immediate pain in the neck and shoulders. Dr. Murphy’s notes indicate that the plaintiff related the accident to him on May 18,1993. Although plaintiff did not complain of pain to her co-workers or supervisor, Dr. Murphy’s notes indicate that plaintiff began complaining of neck and shoulder pain in June of 1993. On September 21, 1993, plaintiff returned to Dr. Phillips who noted that plaintiff had begun experiencing neck spasms and arm and neck pain. According to Dr. Phillips, these symptoms were not present when plaintiff was released in April of 1993. Furthermore, the 1993 MRI showed a large protrusion at the C6-7 level.
Based on the notes of plaintiffs doctors and plaintiffs ability to work without complaint prior to the second accident, we find that plaintiff has shown that she was symptom free prior to May of 1993 and that the second accident aggravated her preexisting condition. Because plaintiff was symptom free prior to the aggravating accident, she is entitled to workers’ compensation upon satisfying the requirements of La.R.S. 23:1221.
COMPENSATION BENEFITS
The second issue is whether plaintiff is entitled to temporary, permanent or supplemental earnings benefits under La.R.S. 23:1221.
An employee is not entitled to temporary or permanent disability benefits if the *387 employee is engaged in any “employment while working in any pain.” La.R.S. 23:1221(l)(b) and (2)(b). Clearly under La. R.S. 23:1221(l)(b) and (2)(b) plaintiff was not entitled to benefits Igwhile she was working for Maison DeVille or Healing Hands. The question is whether plaintiff is entitled to any benefits from the time she ceased her employment with Healing Hands. When an employee is not engaged in any employment or self-employment, temporary or permanent disability benefits “shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment ... including ... employment while working in any pain.” La.R.S. 23:1221(l)(c) and (2)(c).
Plaintiff performed her duties as a licensed practical nurse for a full year following the second accident. Although plaintiff complained of pain, she continued to work at Maison DeVille for approximately three months following the second accident. After resigning her position at Maison DeVille, plaintiff began working for Healing Hands. While plaintiff stated that she performed this job while in pain, she remained with Healing Hands until May 27,1994. In her deposition, plaintiff clearly stated that she left Healing Hands because of the May 19, 1994, automobile accident.[2]
Based on these facts, we find that plaintiff has failed to meet the burden of proof enunciated in La.R.S. 23:1221(l)(c) and (2)(c). Plaintiff failed to prove by clear and convincing evidence that she is physically unable to engage in any employment as a result of the 1993 accident. What plaintiff did show was that until her 1994 automobile accident, she was fully capable of performing her duties as a licensed practical nurse. For these reasons, plaintiff is not entitled to temporary or permanent disability benefits under La.R.S. 23:1221.
A claimant is entitled to supplemental earnings benefits “[f]or injury resulting in the employee’s inability to earn wages equal to ninety per cent or more of wages at time of injury-” La.R.S. 23:1221(3). As indicated in our forgoing discussion, plaintiff did not, as a result of the 1993 incident, lose her ability to earn wages as a licensed practical nurse. In fact, the record reveals that plaintiffs gross income for her last five months of employment with RMaison DeVille was $8549.79. During her last five months with Healing Hands, plaintiffs gross income was $10,188.00. Plaintiff is not entitled to supplemental earnings benefits.
Because plaintiff has not satisfied the statutory requirements of La.R.S. 23:1221, she is not entitled to temporary, permanent or supplemental earnings benefits.
PSYCHOLOGICAL INJURY
The third issue is whether plaintiff is entitled to benefits for her psychological injury. For the reasons which follow, we affirm the hearing officer’s denial of benefits for psychological injury.
To be compensable, a workers’ compensation claimant must prove a mental injury by clear and convincing evidence. La.R.S. 23:1021(7)(b) and (c). Furthermore, “[n]o mental injury or illness shall be compensable under either Subparagraph (b) or (c) unless the mental injury or illness is diagnosed by a licensed psychiatrist or psychologist.” La. R.S. 23:1021(7)(d).
Plaintiff was referred to Dr. Murphy by a paralegal working for her former attorney. Dr. Murphy is not a licensed psychiatrist or psychologist. He is a licensed social worker. Plaintiffs mental injury, if any, is not compensable because her condition was not diagnosed by a licensed psychiatrist or psychologist as required by statute.
For this reason, we affirm that portion of the opinion denying plaintiff benefits for psychological injury.
*388 PENALTIES AND ATTORNEY FEES
The final issue is whether plaintiff is entitled to penalties and attorney fees. We agree with the hearing officer’s determination that Maison DeVille was not arbitrary and capricious in denying plaintiff benefits.
Whether an employer’s refusal to pay compensation benefits is arbitrary and capricious is a question of fact which will not be disturbed on appeal in absence of manifest error. Johnson v. Vinson Guard Service, Inc., 92-2187 (La.App. 1st Cir. 3/11/94); 636 So.2d 914, 916, writ not considered, 94-1661 (La. 9/2/94), 642 So.2d 1280. Where an employer has sufficient factual and medical information to reasonably counter information presented by claimant, the claimant’s request for penalties and attorney’s fees may be denied. Martin v. Riverview Medical Center, 618 So.2d 1014, 1019 (La.App. 1st Cir.), writ denied, 623 So.2d 1333 (La.1993).
Following the incident in May of 1993, plaintiff continued to work at Maison DeVille for approximately three months, resigned, and began working for Healing Hands. Plaintiff continued to work at Healing Hands until the 1994 automobile accident. Plaintiff never complained of pain to her coworkers or supervisor. There was a conflict between the opinions of plaintiffs treating physician, Dr. Phillips, and Maison DeVille’s medical expert, Dr. Cenac. Plaintiffs steady, continued employment, refuted her assertion that she was injured in 1993. It was reasonable to conclude that plaintiffs disability, if any, was caused by the automobile accident.
Maison DeVille had sufficient factual and medical information to reasonably counter plaintiffs claim that her neck condition resulted from the 1993 work related accident. The hearing officer was not manifestly erroneous in concluding that Maison DeVille was not arbitrary and capricious in denying plaintiffs claim for workers compensation benefits. Thus, we affirm that portion of the hearing officer’s opinion denying plaintiffs claim for penalties and attorney’s fees.
CONCLUSION
For the forgoing reasons, the judgment is affirmed at plaintiff-appellant’s costs. AFFIRMED.
FITZSIMMONS and GONZALES, JJ., concur.

. The accident report reflects that the accident occurred on May 14, 1995, however, the claim for compensation indicates that the accident oc *384 curred on May 15, 1995. The date of the accident was not an issue at the hearing.

. At trial, plaintiff added that she quit Healing Hands because of the pain she was experiencing prior to the automobile accident. Given her conflicting testimony on this and several other issues, we find no error in the hearing officer’s conclusion that plaintiff quit Healing Hands because of the automobile accident.