702 So.2d 1133 (1997)
Rebecca Lynn JONES, Claimant-Appellant,
v.
EL MESERO RESTAURANT, Defendant-Appellee.
No. 97-636.
Court of Appeal of Louisiana, Third Circuit.
October 29, 1997.
*1134 Nicholas Pizzolatto, Jr., Lake Charles, for Rebecca Jones.
H. Douglas Hunter, Opelousas, for El Mesero Restaurant.
Before SAUNDERS, PETERS and AMY, JJ.
AMY, Judge.
This is a workers' compensation case. Claimant, Rebecca Jones, appeals the workers' compensation judge's ruling that she is entitled to only partial reimbursement of medical expenses incurred for treatment of a work related lower back injury. For the reasons which follow, we affirm.

DISCUSSION OF THE RECORD
On January 27, 1995, Rebecca Jones, who was employed by El Mesero Restaurant as a dishwasher, allegedly injured her lower back while carrying bus tubs containing fajita pans. On January 30, 1995, her first day back at work following the accident, Jones reported her injury to Cruise Jackson, the kitchen manager. An appointment was arranged by Jackson for later that same day for claimant to be examined by Dr. Allen Richert. Jones was treated for approximately six weeks by Dr. Richert before ultimately being released to return to work without restrictions. Except for payment for this initial medical treatment, no additional payments were made by the defendant for expenses incurred by Jones for treatment on her lower back.
During the months following the accident, Jones also received treatment from a chiropractor and an orthopedic surgeon. Notably, Jones continued working for a ten-month period maintaining her normal hours, in her preinjury position, until her termination for unrelated reasons. In January 1996, three months after her termination, claimant pursued a claim for workers' compensation against defendant, requesting compensation benefits, medical expenses, penalties and attorney's fees. Prior to this time, claimant admittedly failed to notify defendant of any medical treatment pursued after her full work release by Dr. Richert, nor had she requested reimbursement for such treatment at the time the treatment was rendered.
*1135 A hearing on the merits was held on October 14, 1996. In her decision dated February 12, 1997, the workers' compensation judge ruled that Jones was "entitled to limited medical benefits" but denied claimant's demand for TTD benefits, penalties, and attorney's fees. Because Jones failed to notify the defendant or request payment for the nonemergency treatment performed by Dr. Darryl Bauer, a chiropractor, and Dr. Clark Gunderson, an orthopedic surgeon, recovery was limited to the statutory maximum of $750.00, per health care provider, for the unauthorized treatment pursuant to La.R.S. 23:1142.
Jones appeals from that ruling and asserts that the workers' compensation judge erred in: (1) finding claimant was not disabled by her accident and therefore entitled to TTD benefits; (2) failing to order defendant to pay all past due and future necessary medical expenses; and, (3) failing to award attorney's fees and penalties for defendant's arbitrary and capricious behavior in failing to properly investigate claimant's workers' compensation claim.

LAW

TEMPORARY TOTAL DISABILITY BENEFITS
The claimant contends that the workers' compensation judge erred in finding that she failed to prove by clear and convincing evidence entitlement to temporary total disability benefits. The claimant argues that all the evidence presented at the hearing concerning disability supports the proposition that she should not have continued working after the accident and that she was still disabled at the time of the hearing. We disagree.
Entitlement to TTD benefits is governed by La.R.S. 23:1221(1). La.R.S. 23:1221(1) provides, in part, that:
Compensation shall be paid under this Chapter ... with the following schedule of payments:
(1) Temporary total.
(a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
(b) ... compensation for temporary disability shall not be awarded if the employee is engaged in any employment or self-employment... including but not limited to ... employment while working in any pain.
(c) ... whenever the employee is not engaged in any employment or self-employment... compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability ... that the employee is physically unable to engage in any employment or self-employment[.]
A claimant will not be entitled to temporary total disability benefits for time she is employed. Bandy v. International Paper Co., 29,085 (La.App. 2 Cir. 2/26/97); 690 So.2d 902; Guidry v. Maison DeVille Nursing Home, 95-1504; 95-1505 (La.App. 1 Cir. 4/4/96); 672 So.2d 381. However, when a claimant is not engaged in any employment, she may prove an inability to work due to substantial pain. Bailey v. Zurich American Insurance, Co., 503 So.2d 611 (La.App. 4 Cir.1987). In order for a claimant to prove an inability to engage in any employment on account of pain, La.R.S. 23:1221(1) requires proof that the pain is substantial enough to make the pursuit of gainful employment an impossibility. Schexnyder v. PMB Operators, 93-1178 (La.App. 3 Cir. 5/4/94); 636 So.2d 1146, writ denied, 94-1945 (La.11/4/94); 644 So.2d 1059. Whether the claimant's pain is substantial enough is a question of fact to be determined by the totality of circumstances. Roberts v. BE & K Construction Co., 27,116 (La.App. 2 Cir. 6/28/95); 658 So.2d 314. Furthermore, the factual conclusions of the trial court are entitled to great weight and will not be reversed absent manifest error. See Roberts, 27,116; 658 So.2d 314; Harris v. Langston Co., Inc., 94-1266 *1136 (La.App. 3 Cir. 4/5/95); 653 So.2d 789, writ denied, 95-1178 (La.6/23/95); 656 So.2d 1020. A claimant must submit objective medical evidence of the disabling condition to meet his burden of proving entitlement to TTD benefits by clear and convincing evidence. Fritz v. Home Furniture-Lafayette, 95-1705 (La.App. 3 Cir. 7/24/96); 677 So.2d 1132; see also Comeaux v. Sam Broussard Trucking, 94-1631 (La.App. 3 Cir. 5/31/95); 657 So.2d 449.
In Fritz, 95-1705, p. 3-4; 677 So.2d at 1134, we stated:
However, the issue of disability presents a legal not purely a medical, question which must be determined after considering all of the medical and lay testimony in the record. Walker v. Halliburton Services, Inc., 93-722 (La.App. 3 Cir. 3/1/95); 654 So.2d 365, writ denied, 95-1507 (La.9/22/95); 660 So.2d 481. In other words, the hearing officer determines whether a claimant has met his burden of proving disability only after weighing all the medical and lay testimony. Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277 (La.1993). Thus, the issue of disability is a factual determination. Creel v. Concordia Electric Cooperative, Inc., 95-914 (La.App. 3 Cir. 1/31/96); 670 So.2d 406, writ denied, 96-0577 (La.4/19/96); 671 So.2d 923. Factual findings of a hearing officer may not be disturbed by an appellate court unless the factual findings are manifestly erroneous or clearly wrong. Comeaux, 657 So.2d 449. In order for an appellate court to set aside a hearing officer's factual finding, the appellate court must conclude from the record, viewed in its entirety, that a reasonable factual basis did not exist for the hearing officer's finding and that this finding is clearly wrong. Guidry v. Picadilly Cafeterias, Inc., 95-12 (La.App. 3 Cir. 5/24/95); 657 So.2d 325, writ denied, 95-1601 (La.9/29/95); 660 So.2d 870.
The workers' compensation judge found that Jones failed to prove temporary total disability by clear and convincing evidence, and she gave the following written reasons:
Ms. Jones bears the initial burden of proving entitlement to disability benefits. She must prove that she cannot earn 90% or more of her preinjury wage. The court finds that Ms. Jones did not meet this burden as she continued to work for 10 months after the accident, and until the time she was terminated for reasons unrelated to her accident. Her loss of earnings was attributable to her termination, not any disability. Therefore, the court finds that Ms. Jones did not prove an inability to earn 90% or more of her preinjury wage.
The following evidence was introduced at the hearing.
On July 30, 1995, Dr. Allen Richert, a family practitioner, examined Jones. Dr. Richert testified that he treated Jones from January 30, 1995 through February 21, 1995. Dr. Richert's notes revealed that Jones complained of lower back pain caused by lifting heavy weights while performing kitchen work at El Mesero. In correspondence dated January 30, 1995, Dr. Richert provided that claimant was under his care and would be unable to work through February 6, 1995. On February 6, 1995, Dr. Richert recorded that the claimant requested to return to work with limitations on lifting and cautioned against repetitious twisting. Although Dr. Richert's report reflected that claimant was "doing O.K.," he continued the limited work duty order. At the time of Jones' last appointment with Dr. Richert, he inscribed the following correspondence dated February 21, 1995:
Rebecca Jones may return to work regular duty. [Signed Dr. Allen Richert].
This was the last time Dr. Richert examined Jones. Further, in the course of treating claimant, Dr. Richert only performed a cursory physical examination. Neither x-rays were performed nor therapy prescribed. The workers' compensation judge found Dr. Richert's treatment to be inadequate and held claimant was entitled to additional medical treatment.
Jones also sought treatment from Dr. Darryl Bauer, a chiropractor. Dr. Bauer treated Jones from July 22, 1995 through the time of the hearing. Dr. Bauer recalled that, when he first examined Jones, her major complaints included "severe pain in the lower back, localized over the top of the left hip, *1137 with pain radiating into the left buttocks and down the left leg to the knee." During this first visit, Dr. Bauer found that Jones tested positive for a lumbo-pelvic strain/sprain in three separate orthopedic neurological exams. Additionally, Dr. Bauer conducted a radiological examination which revealed claimant had a rotational subluxation[1] of L-4, L5 with left pelvic involvement. Dr. Bauer ordered x-rays of claimant's lumbar region, the results of which corroborated his initial findings.
Treatment performed by Dr. Bauer consisted primarily of manual manipulation of the lower spine, ice packs and ultrasound. Jones related to Dr. Bauer that the treatment provided some relief from the pain, albeit only temporarily. Also, Dr. Bauer placed restrictions on excessive twisting of the hips and no heavy lifting. Dr. Bauer testified that, after he first examined the claimant, he advised her not to continue working but she "told [him] that her job was in jeopardy." Further, when requested to explain why claimant continues to experience lingering pain, Dr. Bauer offered that claimant suffers from "a permanent instability of the lumbo region."
During the period claimant was being treated by Dr. Bauer, Jones, heeding Dr. Bauer's advice that outside intervention was necessary, sought treatment from Dr. Clark Gunderson, an orthopedic surgeon.[2] Dr. Gunderson treated Jones from June 25, 1996 through August 27, 1996. After examining the claimant, Dr. Gunderson reported the following observations: "lumbar spasm,... limited motion, ... tenderness to the left of L5, as well as in the left sacroiliac and sciatic notch region." Although x-rays of the lumbar spine did not indicate any significant abnormality, Dr. Gunderson, fearing that Jones may be suffering from a herniated disc, ordered a bone scan and MRI of the lumbar spine. The results of the bone scan were negative. The radiologist who reviewed the MRI noted the following:
[E]xamination demonstrates the height of the lumbar vertebral bodies and intervertebral disc spaces to be maintained. The discs appear normally hydrated. No significant disc herniation, spinal stenosis or neural canal narrowing is appreciated. There is some mild diffuse annular disc bulging slightly eccentric to the left at the L4-5 level. There is also some mild diffuse annular disc bulging at the L5-S1 level.
Dr. Gunderson, finding claimant not to be a surgical candidate, opined that conservative treatment could be beneficial. On July 25, 1996, he penned the following correspondence:
[T]his patient has a lumbar straining type injury with nerve root irritation. I don't believe she is able to work at this time. I believe that she will improve with appropriate conservative modalities and hopefully, will be able to return to her previous employment.
Accordingly, claimant returned to her therapy with Dr. Bauer, where she continued through the time of the workers' compensation hearing. Dr. Bauer testified that, at the time of the hearing, claimant remains disabled.
Additionally, the workers' compensation judge heard testimony from several lay witnesses.
Jones testified that, after her injury, she returned to work at full duty but continued to experience pain in her lower back. Jones further testified that she informed Cruise Jackson and Jennifer Broussard, fellow employees, that she was experiencing lower *1138 back pain at work. Of the two, only Jennifer Broussard testified.[3]
Jennifer Broussard testified that she worked with Jones for some time before and after claimant allegedly injured her lower back. Broussard recalled claimant telling her that she injured her back lifting a bus tub full of dirty dishes. When asked whether she recalled observing Jones grimace or favor her lower back while working, Broussard responded that she was aware of claimant's back problems because claimant told her she was experiencing pains. Broussard did not observe claimant demonstrate any outside signs of substantial lower back pain.
Caddie Sue Shay, owner of El Mesero Restaurant, and two employees of the restaurant, who worked with claimant during the period in question, testified that they had no knowledge that Jones was experiencing lower back pain while she worked. Shay testified that she was at the restaurant almost daily and was never informed by claimant or anyone else that Jones was injured. Additionally, Jones did not pursue her workers' compensation claim until three months after her termination.
Tim Gamble, claimant's live-in boyfriend, corroborated Jones' testimony that she would return home from work in substantial pain. Gamble testified that, in an effort to alleviate the pain, he and claimant would apply ice packs and heat to claimant's lower back, or he would rub her back. Also, Gamble testified that it was he who suggested that Jones contact Dr. Bauer because he "wasn't going to put up with it anymore." Additionally, Gamble insinuated that Jones' job was threatened if she pursued a workers' compensation claim. However, this allegation remained unsubstantiated for the most part.
Appreciating that the issue of disability is a legal question, we consider whether the medical and lay testimony in the record provides a reasonable basis for the workers' compensation judge's factual determination that claimant was not disabled after the accident. Fritz, 95-1705; 677 So.2d 1132. First, we note that claimant was not entitled to temporary total disability benefits during the ten-month period she continued working at El Mesero. Without considering the prudence of claimant's decision to continue working with pain against the suggestion of her treating physician, Dr. Bauer, the fact remains that she was employed performing her regular duties. As such, temporary total disability benefits were not available during this period of time. La.R.S. 23:1221(1)(b).
Next, we must consider claimant's argument that she was entitled to temporary total disability benefits since the time she was terminated. In making this determination, we find the evidence presented concerning claimant's ability to work and level of performance during the ten-month period she continued working to be indicative that she would have continued to work indefinitely if not for the fact that she was terminated for unrelated reasons. In the case sub judice, all the testimony by persons who had an opportunity to observe the claimant at work, with the exception of the equivocal testimony of Jennifer Broussard, suggests that claimant was not disabled. Broussard testified she was aware of claimant's pain on occasion and, at those times, she would assist claimant with the tubs. However, Broussard testified that she was unsure when these complaints began or whether the complaints continued until the time Broussard ceased working at the restaurant. Furthermore, by her own admission, Jones testified that she received the same amount of assistance carrying and emptying the bus tubs before the accident as after. Therefore, it appears from the evidence provided that, after she injured her lower back, Jones worked the same amount of hours, in the same position, and received the same degree of assistance. Lastly, it is noteworthy that Dr. Bauer's opinion that Jones is disabled, as well as Dr. Gunderson's somewhat equivocal opinion that he does not believe that claimant was able to work in late July, ignores the fact that Jones continued working at El Mesero for a ten-month period following the accident. Rosella v. DeDe's *1139 Wholesale Florist, 607 So.2d 1055 (La.App. 3 Cir.1992). Additionally, Dr. Bauer, as well as claimant, testified that, since the time of claimant's termination, claimant's condition has not changed. As such, we conclude that, even accepting that Jones experienced pain or discomfort while working, the finding of the workers' compensation judge should not be disturbed where, as here, there is evidence which forms a reasonable basis for the finding.

MEDICAL EXPENSES
Jones also argues that the workers' compensation judge erred in limiting the award of medical expenses to $750.00 per health care provider pursuant to La.R.S. 23:1142.
La.R.S. 23:1142 provides in part:
A. Definitions....
(1) "Payor" shall mean the entity responsible, whether by law or contract, for the payment of the medical expenses incurred by a claimant as a result of a work related injury.
B. Nonemergency care. Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the ... employer or the employer's workers' compensation insurer....
Clearly, the statutorily imposed cap of $750.00 per health care provider for all nonemergency care incurred without the consent of the "payor" applies in the case under review. It was undisputed that claimant did not demand additional medical treatment nor was defendant aware that Jones was receiving medical treatment for her lower back injury. During questioning of the claimant regarding her failure to inform defendant that she was receiving treatment, the following colloquy occurred:
Q. Ma'am, that is not my question. My question is very simple. My questions [sic] is: Did you tell your employer that you were under the care of Dr. Bauer?
A. No.
Q. At any time while you were treating with Dr. Bauer, did you go in and fill out another employer report of occupational injury or disease?
* * * * * *
A. No.
Likewise, Jones testified that she did not submit to defendant any medical bills for treatment previously incurred until three months after her termination. Jones contends that she did not do so because she was scared that it would place her job in jeopardy. However, even after she was terminated for unrelated reasons and the alleged threat was removed, Jones remained silent about a possible workers' compensation claim. Instead, Jones sought unemployment benefits thereby admitting that she was able to work. It was only after receiving unemployment compensation for several weeks that Jones ceased drawing unemployment and filed her claim for workers' compensation.
Additionally, Jones argues that the workers' compensation judge erred in failing to award her future medicals. It is well established that in workers' compensation law, an employer must reimburse an employee for all necessary medical treatment incurred as a result of her work related injury. La.R.S. 23:1203. "Nevertheless, an award for an injured employee's medical bills cannot occur until the expenses are actually incurred." Anderson v. Biedenharn Bottling Group, 95-646, p. 11 (La.App. 3 Cir. 11/2/95); 664 So.2d 588, 594. Accordingly, the workers' compensation judge was correct in denying claimant's claim for future medical treatment.

PENALTIES AND ATTORNEY'S FEES
Finally, Jones argues that the workers' compensation judge erred in finding that El Mesero was not arbitrary and capricious in its failure to investigate her workers' compensation claim, entitling her to penalties and attorney's fees.
La.R.S. 23:1201 provides for the award of penalties and attorney's fees against an employer *1140 who arbitrarily, capriciously, or without probable cause refused to pay workers' compensation benefits. Lacava v. Albano Cleaners, 95-1141 (La.6/27/95); 656 So.2d 990. Defendant contends that it was justified in failing to pay workers' compensation benefits because claimant was physically able to perform her duties, and did so for ten months prior to her termination, and that defendant had no knowledge of a possible workers' compensation claim until three months after claimant's termination for unrelated reasons. Therefore, defendant contends that it should not be penalized for requiring a judicial determination of a disputed fact.
Our review of the record reveals that, upon discovering claimant suffered a work related injury, the defendant immediately sent claimant to receive medical treatment with Dr. Richert and timely paid for all medical treatment which it had knowledge of. Entitlement to statutory penalties and attorney's fees requires the employer's action be deemed arbitrary and capricious and the nonpayment of medical expenses was a result of conditions over which the employer had control. La.R.S. 23:1201; Anderson, 95-646; 664 So.2d 588. It was Jones' actions following her injury which impeded her receipt of reimbursement for medical expenses. As previously discussed herein, Jones failed to inform the defendant that she was experiencing pain, needed additional medical treatment, or was in fact receiving additional medical treatment. It was claimant's actions which laid the foundation for defendant disputing the validity of the workers' compensation claim. Accordingly, we find the workers' compensation judge was not in error when she denied Jones' claim for penalties and attorney's fees.

DECREE
The judgment of the workers' compensation judge is affirmed. All costs of this appeal are to be borne by the claimant/appellant, Rebecca Jones.
AFFIRMED.
NOTES
[1] Dr. Bauer defined a subluxation as "a misalignment of a vertebra in the back that could possibly add pressure to a nerve root, which is indicative to cause pain, spasms."
[2] In correspondence dated March 11, 1996, Dr. Bauer opined that:

[T]he release to work by Dr. Richart [sic] on 2-21-95 and [claimant] continuing to work those five months before she saw me greatly aggravated her injuries to where she is now. It has been several months since I have restricted all her activities in hopes she would respond more favorably to treatment which has been somewhat unsuccessful. I am continuing the once a week treatment for relief of her pain but strongly believe she needs either orthopedic or neurological evaluation for any permanent disabilities of injuries.
[3] It appears from the record that a subpoena was issued in Cruise Jackson's name to insure his appearance at trial. However, although delivery was attempted on more than one occasion, the subpoena was never successfully served.