731 So.2d 432 (1999)
Adelina S. ARAUJO
v.
MARRIOTT CORPORATION.
No. 98-CA-1129.
Court of Appeal of Louisiana, Fifth Circuit.
March 30, 1999.
*433 Bernard V. Davis, Dwight W. Norton, Metairie, Louisiana, Attorneys For Appellant Adelina S. Araujo.
Shannon Seiler Dartez, Lafayette, Louisiana, Attorney For Appellee Marriott Corporation.
Panel composed of Judges H. CHARLES GAUDIN, CHARLES GRISBAUM, Jr. and JAMES L. CANNELLA.
*434 CANNELLA, Judge.
Plaintiff, Adelina Araujo, appeals from a judgment in favor of defendant, Marriott Corporation, in a workers' compensation case. We affirm.
Plaintiff speaks very little English. Her primary language is Spanish. On March 28, 1996, while in the course and scope of her employment as a housekeeper with defendant, she tripped over some tangled sheets on the floor, injuring her knee. Plaintiff immediately reported the incident and was examined by defendant's nurse on duty, Cindy Moran (Moran). Moran treated her with an ice pack. Through a translator she asked if plaintiff wanted a doctor or to go home. Plaintiff said "no" and returned to work completing her shift.
Plaintiff continued to work as a housekeeper until April 30, 1996, then sought medical attention on her own. She eventually was referred to defendant's orthopedic surgeon, Dr. Donald C. Faust. Since he is primarily a hand specialist, he sent her to Dr. Courtney Russo, another orthopedic surgeon. Neither doctor speaks Spanish. Dr. Russo performed surgery on the knee and released plaintiff to light duty work on July 3, 1996. Unhappy with the results of the surgery, plaintiff received approval from defendant to see her own choice of doctor, Dr. Raul Diaz, who speaks Spanish. In September of 1996, plaintiff stopped working. She was treated by Dr. Diaz until January of 1997, after which defendant stopped authorization for her medical expenses. Dr. Diaz resumed treatment of plaintiff in October of 1997 and continued to treat her up to the date of trial. Plaintiff was also referred by defendant to Dr. Terry Habig, seeing him in October of 1997, after suit was filed, and in May of 1998. She was seen by Dr. Harry Hoerner at the request of the Office of Workers' Compensation in April of 1998.
On March 18, 1997, plaintiff filed a Disputed Claim for Compensation, seeking worker's compensation benefits from September 19, 1996 until she is able to return to work and for penalties and attorney's fees for defendant's arbitrary and capricious termination of benefits. Trial was held before the judge on June 29, 1998. On August 31, 1998, judgement was rendered in favor of defendant and plaintiffs suit was dismissed.
The issues presented in this appeal are whether the judge erred in failing to find that plaintiff was entitled to temporary total disability or supplemental earnings benefits and in failing to award penalties and attorney's fees.
Plaintiff first argues that the judge erred in finding that Dr. Diaz had not discharged her from all work duties after September 19, 1996 and September 15, 1997. However, the reasons for judgment do not reflect that statement. The judge found that plaintiff failed to prove that she is temporarily totally disabled from performing any job because the medical evidence shows that plaintiff can perform light duty work. Plaintiff also complains that the judge erred in not ordering treatment for plaintiff's thumb injury which resulted from her knee giving out and in finding the plaintiff suffers from a preexisting arthritic condition when all the medical opinions agree that plaintiffs right knee complaints were traumatically caused and aggravated. She further argues that the judge erred in failing to give sufficient weight to the opinion of the treating physician that plaintiff will need a second arthroscopic surgery.
Plaintiff testified at trial through an interpreter. She stated that she worked in pain after the incident and, despite numerous requests, Moran refused to send her to a doctor. Plaintiff said that she sought medical assistance on April 8, 1996 from her family doctor, who gave her an offwork slip for an orthopedic referral, which she said that she gave to Moran. Moran denied receiving the slip. Towards the end of April, plaintiff went to a chiropractor, who wrote a note that plaintiff should see an orthopedic doctor. At that point, Moran noted that plaintiffs knee was swollen *435 and she sent plaintiff to Dr. Faust, who referred her to Dr. Russo.[1] The surgery was scheduled five days after plaintiff saw Dr. Faust.
Ten days after plaintiff's surgery, she was released to part-time light duty work. On July 3, 1996, she was released to fulltime light duty work. Her initial duties were wrapping silverware and folding napkins, but she claimed that the supervisor made her carry blankets and towels when she went to and returned from the rest room. She stated that this was difficult because the towels were heavy and she almost fell due to the instability in her leg from the knee problem. In addition, she was having problems sitting for long periods, and her supervisor would not let her stand periodically to relieve the discomfort. After a few weeks, defendant assigned her to polishing/cleaning commercial size ash trays and waste paper baskets and working in the laundry. In addition, defendant stopped paying for taxis and plaintiff was required to walk 2 blocks from a bus stop to work. Although she was receiving narcotics for pain, cortisone injections and physical therapy during this period, plaintiff stated that she was suffering "heavy" pain and having difficulty walking and sitting. Plaintiff was unhappy with Dr. Russo's treatment. She said that Dr. Russo only spoke to Moran about her treatment because he did not speak Spanish. Plaintiff contended that they could not communicate due to the language difficulty and he could not understand her complaints. As a result, she sought treatment from Dr. Diaz in September of 1996.
Moran testified that plaintiff was provided taxis for the first 6 weeks after surgery, until Dr. Russo said she could take the bus. She stated that plaintiff was happy doing the light duty work and that plaintiff was permitted to move around at will and take breaks. She testified that the trash cans were brought to her in housekeeping. Plaintiff only had to polish the tops of the cans. Moran said that plaintiff ambulated well whenever she saw her, at home visits and at the morning employee meetings.
When plaintiff started treatment with Dr. Diaz, she was still in physical therapy and, in early September, the physical therapy reports indicated that her pain was increasing, with the right leg "giving way." As a result, Dr. Diaz discontinued physical therapy and took her off all work. According to Dr. Russo's deposition, based on these reports, he also would have discontinued physical therapy and taken her off work for a few weeks. Dr. Diaz testified that plaintiff was having much difficulty ambulating and that her knee could buckle at any time. He admitted that plaintiff could work sitting down if someone could pick her up from home and physically assist her to get to work and sit her down in a chair. She would have to be able to change positions and bend the knee. However, the problem would be getting to work and getting in and out of cars. Furthermore, plaintiff is on narcotic pain medications which would impair her ability to work.
Plaintiff was treated by Dr. Diaz from September of 1996 until December of 1997. In January of 1997, Dr. Diaz wrote a note stating that she was totally disabled due to the knee at that time. However, defendant stopped authorization for treatments then, apparently because there was some confusion in the medical records as to whether Dr. Diaz was treating her for her knee, a brain tumor or a back problems. At that point, plaintiff had also been diagnosed independently with a brain tumor and was scheduled for that surgery. After suit was filed, authorization was granted for treatment and plaintiff returned to Dr. Diaz on October 21, 1997. During all of these visits, plaintiff's knee was swollen and tender and she was developing back problems from limping. He requested Magnetic Resonance Imaging (MRI) of the lumbar spine, but defendant failed to approve it on the basis that it was not related *436 to the knee injury. However, Dr. Habig, who saw plaintiff at the request of defendant on September 15, 1997 and May 18, 1998, found her complaints related to the injury and concurred that the limp could contribute to back problems. Dr. Diaz concluded that plaintiff requires further surgery. He finds her totally disabled temporarily because of her mobility difficulties.
Dr. Russo testified that plaintiff can perform light duty work. This opinion was shared by Dr. Habig and by Dr. Hoerner.
Factual findings in workers' compensation cases are subject to the manifest error standard of appellate review. Chaisson v. Cajun Bag & Supply Co., 97-1225 (La.3/4/98), 708 So.2d 375, 380; Langley v. Bechtel Co., 97-260 (La.App. 5th Cir. 3/11/98), 708 So.2d 1233, 1236.
La.R.S.23:1221 provides for temporary total disability; permanent total disability; supplemental earnings benefits and permanent partial disability. For temporary total disability, the statute states:
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(1) Temporary total.
(a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
(b) For purposes of Subparagraph (1)(a) of this Paragraph, compensation for temporary disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.
(c) For purposes of Subparagraph (1)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (1)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
A plaintiff who may not prove temporary total disability may nevertheless be entitled to supplemental earnings benefits under R.S. 23:1220(3) as follows:
(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times *437 the wages as defined in R.S. 23:1021(10)....
(c)(I) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region.
(ii) For purposes of Subsubparagraph (I) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment.....
The employee in a workers' compensation case has the burden of proving that an accident occurred in the course and scope of his employment, that the accident caused his injury and that the injury caused his disability. Cowart v. Magnolia School, Inc., 96-785 (La.App. 5th Cir. 1/28/97), 691 So.2d 104, 106.
If the claimant proves that he cannot return to work due to work related injuries, then the burden shifts to the employer to prove that there are jobs available within the employee's capabilities. Id. at 106.
In this case, the judge determined that plaintiff failed to prove that she cannot work in any job. All of the physicians testified that she has knee problems that have not resolved, but that she can perform the type of light work assigned to her after her injury. Dr. Diaz restricted her from working because he was under the impression that she was working as a housekeeper. However, he agreed that she could perform sit-down work, if she could change her position as needed and if she had assistance getting to and from work. He did not think that she could walk two blocks. Dr. Russo stated that she was in the same condition as when he released her for light duty work. Defendant contends that it can provide such work to plaintiff.
Based on the evidence, we find no manifest error in the judge's determination that plaintiff can perform the job offered by defendant. Most of the doctors think she can ambulate adequately. We note that if plaintiff requires a second surgery, then plaintiff will be entitled to further benefits. Thus, we will affirm the judgment of the judge.

PENALTIES AND ATTORNEY'S FEES
In order to obtain attorneys' fees and penalties, plaintiff must prove that defendant was arbitrary and capricious in refusing to provide benefits and medical expenses. Langley v. Bechtel Co. 708 So.2d at 1236. La. R.S. 23:1201 F(2) states that the penalty provision does not apply if the claim is reasonably controverted or the non-payment results from conditions over which the employer has no control. The determination of whether penalties and attorney fees are due is within the discretion of the trial court. Id. at 1236
An employer who fails to investigate an employee's compensation claim subjects itself to statutory penalties and attorney fees. Cochennic v. Dillard's Dept. Store Warehouse, 95-705 (La.App. 5th Cir. 1/17/96), 668 So.2d 1161, 1167; Nelson v. Roadway Exp., Inc., 588 So.2d 350, 355 (La.1991). An employer is required *438 to make a reasonable effort to ascertain an employee's exact medical condition before benefits are terminated. Cochennic v. Dillard's Dept. Store Warehouse, 668 So.2d at 1167. This obligation is continuing in nature. Therefore, if after an initial optimistic report, an employer receives medical information indicating the possibility of continuing disability, the employer may not blindly rely upon the earlier report to avoid penalties for arbitrary nonpayment of compensation benefits. Id. at 1167.
In this case, there was a bona fide dispute as to whether plaintiff could perform the work. Under these circumstances, we find that plaintiff is not entitled to penalties and attorney's fees.
Accordingly, the judgment of the workers' compensation judge is hereby affirmed. Costs of appeal are assessed against plaintiff.
AFFIRMED.
NOTES
[1] Dr. Faust is an orthopedic surgeon who specializes in hand surgery.