WALTER J. ROTHSCHILD, Judge.
This worker’s compensation case arises from an incident that occurred on February 26, 1994. While in the course and scope of his employment as a maintenance supervisor with Alexas Corporation, the claimant, Jerry Crews, was walking on an apartment floor when his foot went through a rotten floorboard and he fell forward, hitting a window ledge. He suffered several injuries as a result of this incident and has seen many doctors over the past nine years. He also had right thoracic outlet surgery in 1995 due to this accident. Mr. Crews has received worker’s compensation benefits since 1994.
On April 1, 2002, Mr. Crews filed a disputed claim for compensation with the Office of Worker’s Compensation seeking a declaration that he is permanently and totally disabled, and asserting that his medical and transportation expenses have not been timely paid by Louisiana Worker’s Compensation Corporation (LWCC).
Trial of this matter was held on March 10, 2003. On April 30, 2003, the worker’s compensation judge signed a judgment finding 1) that Mr. Crews did not meet his *732 burden of proving that he is permanently and totally disabled; 2) that Mr. | sCrews is entitled to continue receiving temporary total disability benefits; 3) that Mr. Crews is entitled to the continuing payment of all medical expenses, medication expenses and transportation expenses for the injury sustained on February 26, 1994; 4) that Mr. Crews shall be provided with retraining and psychotherapy to determine if he can return to work in a sedentary job; 5) that the medicals established that there are extremely limited possibilities for Mr. Crews to return to any productive occupation; 6) that the defendants have been arbitrary and capricious in their refusal to timely pay the medical bill for Mr. Crews’ functional capacity evaluation, and they must pay a penalty of $2,000.00. It is from this judgment that the defendants, Alexas Corporation and LWCC, appeal.

DISCUSSION

On appeal, the defendants assert four assignments of error. In the first assignment of error, the defendants contend that the worker’s compensation judge was manifestly erroneous and committed legal error in concluding that Jerry Crews was “entitled to the continuing payment of temporary total disability benefits.” The defendants do not dispute that Mr. Crews suffered injuries in the 1994 incident or that he continues to have some level of pain and certain restrictions to this date. However, they argue that he has not proven that he is totally disabled or that he cannot work at all. Mr. Crews asserts that he is not able to perform work in any employment setting due to his pain.
In order to prove entitlement to total temporary disability (TTD) benefits, the employee must prove by clear and convincing evidence that he is physically unable to engage in any employment, regardless of its nature. Atwood v. Ewing Timber, Inc., 34,045 (La.App. 2 Cir. 12/15/00), 774 So.2d 1140, 1144, writ denied, 01-543 (La.5/11/01), 792 So.2d 733. The worker’s compensation judge must weigh all of the evidence to determine if the claimant has met his burden of proving total temporary disability. Id. The existence of pain is not relevant to the 14question of entitlement to TTD benefits. Harris v. Langston Co., Inc., 94-1266 (La.App. 3 Cir. 4/5/95), 653 So.2d 789, 795, writ denied, 95-1178 (La.6/23/95), 656 So.2d 1020.
At trial, Mr. Crews testified about the accident, his medical treatment, and the medication that he currently takes, including morphine. He also testified that he has been house-sitting for about four months and that prior to house-sitting, he lived with his sister for a year and a half. During that time, he had to take care of himself, including doing laundry, cleaning the bathroom, and washing dishes.
Mr. Crews has seen many doctors since the accident for both physical and medical issues, and he had right thoracic outlet surgery in 1995. The claimant submitted letters written in 1995 and 1996 by Dr. Watts Webb, a cardiothoracic surgeon, in which Dr. Webb opined that Mr. Crews was not able to work and that the best he could hope for would be retraining to a sedentary desk job. The claimant returned to see Dr. Webb on March 3, 2003, which was the week before trial. By letter that same date, Dr. Webb indicated that Mr. Crews has limited possibilities for a productive occupation and that sedentary work for Mr. Crews would have to be in a carefully constructed occupation. However, Dr. Webb did not indicate that Mr. Crews was not able to do sedentary work at all. Mr. Crews also submitted a letter dated May 15, 2000 from Dr. Hurayt, a Georgia psychiatrist, stating that he could not envision Mr. Crews returning to work. Although Mr. Crews did submit some in *733 formation in support of his position that he cannot work, most of the evidence presented at trial is to the contrary.
Mr. Crews is currently living in Illinois. While in Illinois, he has seen several doctors, including Dr. Michael Amaral, Dr. Jumar Apolinario, and Dr. Ramsin Benya-min. He first saw Dr. Amaral, a neurosurgeon, in November of 2001. In a letter dated December 28, 2001, Dr. Amaral opined that he was doubtful that additional surgery would help Mr. Crews and stated that he didn’t pbelieve he could be of further benefit to him. He referred Mr. Crews to Dr. Apolinario, who specializes in physical medicine and rehabilitation. Dr. Apolinario recommended that Mr. Crews undergo a Functional Capacity Evaluation (FCE) to assess his functional abilities. On November 7 and 8, 2002, Mr. Crews appeared for the FCE testing. According to Kim Weber, who was the physical therapist who performed the FCE, Mr. Crews admitted his displeasure at having to participate in the FCE and told her that he knew he would not be able to complete the testing. Mr. Crews had subjective complaints of pain and Ms. Weber noted that during one of the physical activities, his heart rate dropped, which indicated that he was not fully exerting himself. After completing some of the tests on the first day, Mr. Crews stated that he could not do anymore and he declined Ms. Weber’s offer to rest or to do lower-level activities. On the second day of testing, Mr. Crews again refused to perform several tests.
Ms. Weber believed that he could do more of the tests and that he was self-limiting. She noted that he took a subjective part of the exam on the first day while sitting on an exam table for approximately 50 minutes. He declined her offer to sit in a chair with back support, which is commonly requested by patients with back pain. In his brief to this Court, Mr. Crews admitted that he was self-limiting and stated that he is an expert on what will hurt him and what he should not attempt. Although Mr. Crews refused to complete much of the testing and was self-limiting during some of the testing, based on the testing that he did complete, Ms. Weber believes that he can tolerate sedentary work.
After reviewing the FCE, Dr. Apolinario opined, in a letter dated January 31, 2003, that Mr. Crews was employable at least at a sedentary level. Dr. Benyamin, who specializes in pain management, has treated Mr. Crews for chronic pain and still treats him. When asked whether Mr. Crews could return to work, Dr. | fiBenyamin stated in a letter dated January 29, 2003 that he would defer to Dr. Apolinario’s opinion.
Mr. Allen Crane, a vocational rehabilitation counselor, testified that he interviewed Mr. Crews on January 7, 2003 by phone. Relying on Dr. Apolinario’s opinion that he was capable of sedentary work, Mr. Crane identified potential employment opportunities for Mr. Crews. However, Mr. Crews told Mr. Crane that he did not feel capable of working and did not need Mr. Crane’s assistance because he was not interested in pursuing employment. Nevertheless, Mr. Crane sent notification to Mr. Crews of five job openings in the New Orleans area, including the pertinent contact information and salary information. Out of the four jobs proposed, Dr. Apoli-nario approved four of them for Mr. Crews. Mr. Crane received a letter from Mr. Crews dated February 19, 2003 in which he stated that he did not feel that a sitting job was right for him.
Mr. Michael McKee, a vocational consultant, testified via deposition. He stated that he met with Mr. Crews on December 3, 2002, and Mr. Crews told him that he was permanently and totally disabled and *734 will never work again. He wrote a letter to Mr. Benyarain who responded that he would defer to Dr. Apolinario regarding Mr. Crews’ ability to work. Thereafter, he contacted Mr. Crews and told him that he had been given directions to begin job placement, but Mr. Crews responded that he had no intention of being involved in that. Mr. McKee performed a labor market survey and identified several sedentary jobs in Illinois.
An appellate court should not set aside the findings of fact of a worker’s compensation judge unless they are manifestly erroneous or clearly wrong. Navarre v. K-Mart, 01-753 (La.App. 5 Cir. 11/27/01), 803 So.2d 206, 208. Considering the law and the record in this matter, we find that the worker’s compensation judge was indeed clearly wrong when she found that Mr. Crews was entitled to TTD benefits. Clear and convincing evidence is evidence 17demonstrating that the existence of a disputed fact is highly probable. Atwood, supra at 1144. The record before us indicates that he did not meet his burden of proving by clear and convincing evidence that he is unable to engage in any employment. Although Mr. Crews does have restrictions and limitations on the work that he can perform, the medical and testimonial evidence strongly indicates that he is able to work at a sedentary job. However, Mr. Crews has made no attempt to find a job or to utilize the job placement assistance that has been offered to him, because he stated that he is not able to work.
Accordingly, because the claimant has not established that he is unable to work in any employment setting, we reverse and vacate the worker’s compensation judge’s award of TTD benefits to the claimant, Jerry Crews. However, we note that the record suggests that Mr. Crews may be entitled to supplemental earnings benefits. Since this was not an issue that was addressed at trial, we reserve his right to seek supplemental earnings benefits pursuant to LSA-R.S. 23:1221(3).
In the second assignment of error, the defendants argue that the worker’s compensation judge was manifestly erroneous and committed legal error in concluding that Jerry Crews is “entitled to the continuing payment of all medical expenses, medication expenses, and transportation expenses for the injuries sustained on February 26, 1994.”
A worker’s right to medical treatment is independent of his right to TTD benefits. Anderson v. Biedenharn Bottling Group, 95-646 (La.App. 3 Cir. 11/2/95), 664 So.2d 588, 594. LSA-R.S. 23:1203 provides that the employer must reimburse the employee for all necessary medical expenses incurred as a result of his work-related injury. Mr. Crews is still incurring medical expenses, including fees for psychiatric treatment, as a result of this accident. We agree with the worker’s compensation judge that his expenses for this continuous and ongoing treatment are compensable and should continue to be paid, as long as they are |srelated to the accident. Although Mr. Crews may indeed be entitled to future medical expenses arising from the February 26, 1994 accident, an employee is not entitled to an award of medical expenses until they are actually incurred. Anderson, supra. Accordingly, such an award is premature at this time.
Likewise, we note that Dr. Hurayt, a psychiatrist who treated Mr. Crews, recommended in June of 2000 that Mr. Crews be provided transportation because he believed that it was too dangerous for him to drive far distances. LWCC has agreed to provide transportation in the past and Mr. Crews is still entitled to *735 transportation to his ongoing medical treatment. He may be entitled to future transportation expenses as well, if they are properly requested. However, like an award of future medical expenses, an award of future transportation expenses is premature. Accordingly, insofar as the trial court’s judgment awards future medical and transportation expenses, the judgment is reversed.
In the third assignment of error, the defendants contend that the worker’s compensation judge was manifestly erroneous and committed legal error in concluding that Jerry Crews “shall be provided with retraining and psychotherapy to determine if he can return to work in a sedentary job.” In addressing the defendants’ first assignment of error, we found that Mr. Crews did not prove that he is unable to work at a sedentary level. Therefore, we conclude that Mr. Crews is not entitled to additional training and psychotherapy to determine if he can work at a sedentary job because this determination has already been made. Accordingly, this ruling by the worker’s compensation judge is reversed.
In the fourth assignment of error, the defendants argue that the worker’s compensation judge committed legal error and was manifestly erroneous in concluding that “defendants have been arbitrary and capricious in their refusal to timely pay the medical bill for the functional capacity evaluation.” LSA-R.S. 23:1201(E) provides that medical benefits shall be paid within 60 days after the 19employer or insurer receives written notice. An employer may be assessed penalties if he refuses or fails to pay benefits or medical expenses that are due. LSA-R.S. 2S:1201(F); Araujo v. Marriott Corporation, 98-1129 (La.App. 5 Cir. 3/30/99), 731 So.2d 432, 437. Statutory provisions permitting assessment of penalties are penal in nature and must be strictly construed. Baker v. Libbey Glass, Inc., 32,748 (La.App. 2 Cir. 5/10/00), 759 So.2d 1007, 1014, writ denied, 00-1676 (La.9/15/00), 768 So.2d 1280.
At trial, Ms. Thea Smith testified that she has been employed by LWCC for ten years and has been assigned to Mr. Crews’ claim for the past two years. She stated that all of Mr. Crews’ bills have been paid within 60 days. She testified that LWCC received a bill for the FCE on December 3, 2002. However, the billing statement was sent back on January 22, 2003 with a request that the provider re: submit the bill with reports and documentation generated in association with the testing. LWCC did not receive the bill with supporting documents until February 25, 2003, which was approximately two weeks before trial. Ms. Smith stated that the bill would be in line for payment at this time.
A worker’s compensation claimant is not entitled to penalties unless the withholding of benefits is found to be arbitrary, capricious, or without probable cause. Robinson v. Integrated Tank Services, Inc., 96-1080 (La.App. 5 Cir. 5/14/97), 695 So.2d 1009, 1011. The record does not support a finding that LWCC was arbitrary and capricious in failing to pay the FCE bill. Although the bill had not been paid by the time of trial, there was no indication that LWCC refused to pay the bill or would not pay the bill at all. Rather, LWCC wanted documentation to support the bill prior to paying it, and payment of the bill in the near future would still be considered timely. Accordingly, we find that the worker’s compensation judge was clearly wrong when she found the defendants to |10be arbitrary and capricious. Therefore, we reverse and vacate *736 the $2,000.00 penalty assessed against the defendants.

DECREE

For the reasons set forth above, we reverse and vacate the worker’s compensation judge’s award of temporary total disability benefits to Mr. Crews, but we reserve his right to seek supplemental earnings benefits. We amend the judgment as to future medical and transportation expenses and find that only those medical and transportation expenses that are ongoing are ordered to be paid. Any award of future medical and transportation expenses that are not ongoing and have not yet been incurred are premature at this time. We also reverse the worker’s compensation judge’s ruling ordering the defendants to provide retraining and psychotherapy for Mr. Crews in order to determine if he can perform sedentary work. Finally, we reverse the trial court’s assessment of a $2,000.00 penalty against the defendants.

REVERSED IN PART; AFFIRMED IN PART AS AMENDED.